SELECTMEN OF HYDE PARK *vs.* OLD COLONY STREET
RAILWAY COMPANY.

Norfolk.     January 23, 1905. — May 19, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Street Railway.     Way.*

Under Pub. Sts. c. 113, § 7, the selectmen of a town in granting an original location
to a street railway company could impose a more onerous duty as to repairs of
the public ways than that imposed by the general laws.

A condition imposed by the selectmen of a town in granting an original location to
a street railway company under Pub. Sts. c. 113, § 7, that the company shall
keep that portion of the streets and highways included between its tracks and
for a distance of eighteen inches outside thereof at all times flush with the top
of the track and shall keep the same in repair to the satisfaction of the select-
men, is valid.

Under Pub. Sts. c. 113, § 7, as well as under St. 1898, c. 578, § 13, which expressly
provides for imposing methods of construction, the selectmen of a town in
granting an original location to a street railway company could impose a condi-
tion, that the railway company should reconstruct its track and roadbed with
such different material as the board of selectmen might require.

The last clause of § 13 of St. 1898, c. 578, in regard to the granting of locations to
street railway companies, providing that "all locations heretofore granted or
in use are hereby ratified and confirmed, as if accepted under the provisions
of this section," is in effect a declaration that the interpretation given in practice
to Pub. Sts. c. 113, § 7, was correct.

A condition contained in the original grant of location to a street railway company
by the selectmen of a town was as follows: "Said railway company shall re-
construct their track and roadbed by laying down such different material there-
for as the board of selectmen after public hearing may judge that public safety
and convenience requires; but no radical change in material of said track or
roadbed shall be made until after the road has been in operation one year,
except to make necessary repairs." *Held,* that under this condition the select-
men could make a valid order requiring the railway company to take up fifty
pound T rails specified in the location and replace them by ninety pound girder
rails.

BILL IN EQUITY, filed March 7, 1904, under R. L. c. 112,
§ 100, by the selectmen of the town of Hyde Park to enforce
the terms of a railway location granted on March 3, 1893, and
accepted by the defendant through its directors.

The defendant demurred, and the case came on to be heard
upon the bill and demurrer before *Lathrop,* J., who reserved it
for determination by the full court. If the demurrer should be
sustained the bill was to be dismissed. If the demurrer should

be overruled the defendant was to answer and the case was to stand for trial on its merits.

*C. F. Jenney*, for the plaintiffs.

*E. W. Burdett*, (*J. Gordon & G. H. Knight* with him,) for the defendant.

LORING, J.   This is a bill in equity under R. L. c. 112, § 100, to compel the observance of an order of the plaintiff board, made on December 19, 1903.   The order was confined to the tracks operated and maintained under the original location granted to the Norfolk Suburban Street Railway Company on March 3, 1893, and directed the defendant corporation as the successor of said Norfolk Suburban Street Railway Company (1) to reconstruct its tracks and roadbed, and (2) to keep in repair and flush with the top of its tracks the portion of the streets and highways included between its tracks and for a distance of eighteen inches outside thereof.

The restriction as to repairs, being contained in an original location, is not affected by St. 1898, c. 578, § 11, and does not come within *Worcester* v. *Worcester Consolidated Street Railway*, 182 Mass. 49.

For convenience we will in substance follow the order in which these questions have been argued by the defendant and will first take up the question of repairs.

The original location was granted to the defendant's predecessor on March 3, 1893, that is to say, under Pub. Sts. c. 113, § 7.

One of the "terms and restrictions" subject to which the location was granted was this: "The railway company shall keep that portion of the street and highways as are included between its tracks and for a distance of eighteen inches (18″) outside thereof, at all times flush with the top of the track, and shall keep the same in repair to the satisfaction of the selectmen."

The duty of repair imposed by this restriction was more onerous than the duty imposed by the general laws then in force. Under the laws then in force, the duty imposed on street railways in respect to keeping public ways in repair was that which originated in St. 1881, c. 121, re-enacted in Pub. Sts. c. 113, § 32, and was confined to keeping in repair "the paving,

upper planking, or other surface material of the portions of streets, roads, and bridges occupied by its tracks; and if such tracks occupy unpaved streets or roads, shall, in addition, so keep in repair eighteen inches on each side of the portion occupied by its tracks." See *Leary* v. *Boston Elevated Railway*, 180 Mass. 203. The duty of repair under earlier statutes may be found in St. 1864, c. 229, § 18; St. 1866, c. 286; St. 1871, c. 381, § 21.

The defendant's contention is that no power was given to the selectmen in granting a street railway location under Pub. Sts. c. 113, § 7, to impose a more onerous duty in respect of repair than that imposed by the general laws.

Its counsel relies on *Keefe* v. *Lexington & Boston Street Railway*, 185 Mass. 183, as decisive of that question. He points out that that case arose under St. 1898, c. 578, § 13, which expressly gives to selectmen more extended powers than are conferred upon them in terms by Pub. Sts. c. 113, § 7. By § 13 of St. 1898, c. 578, it is provided that in granting a location the selectmen " may prescribe the manner in which said tracks shall be laid, and the kind of rails, poles, wires and other appliances which shall be used, and they may also impose such other terms, conditions and obligations in addition to those applying to all street railways under the general provisions of law, as the public interest may in their judgment require."

The power of the selectmen under Pub. Sts. c. 113, § 7, was to grant a location " under such restrictions as they deem the interests of the public may require." This is a re-enactment of St. 1864, c. 229, § 14, and St. 1871, c. 381, § 14.

But the decision in *Keefe* v. *Lexington & Boston Street Railway* does not reach the case now before us. That was not a case where something was added to the burden imposed by the general laws, as is the fact in the case at bar, but a case where the company undertook to deal with a matter in a way which was inconsistent with the way in which the general laws then in force directed it to be dealt with. The restriction in the location in that case fixed absolutely the fares to be charged. The laws then in force, Pub. Sts. c. 113, § 43, gave the directors a right to establish the rates of fare subject to their being regulated by the railroad commissioners under St. 1898, c. 578, § 23. Further there

was an additional reason for reaching the conclusion reached in *Keefe* v. *Lexington & Boston Street Railway*, (that after St. 1898, c. 578, the rate of fares could not be fixed by a restriction in a grant of location,) namely: Before St. 1898, c. 578, the power of selectmen to fix the rate of fare by inserting a restriction to that effect in a grant of location was expressly recognized. St. 1864, c. 229, § 26. St. 1871, c. 381, §§ 34, 35. Pub. Sts. c. 113, §§ 44, 45. These acts were repealed by St. 1898, c. 578, § 26, subject to which the location there in question was granted. We therefore are of opinion that this particular contention of the defendant is not well taken, to wit, that the case of *Keefe* v. *Lexington & Boston Street Railway* decided that in granting a location under Pub. Sts. c. 113, § 7, no duty can be added to that imposed by the general laws.

We also are of opinion that its more general contention is not well taken, that the duty of repair imposed in the grant of location here in question was void.

We are of opinion that the power of selectmen under Pub. Sts. c. 113, § 7, goes at least as far as this, namely, to put such restriction upon what otherwise would be an absolute grant as the public interest requires from the grant having been made. See *Newcomb* v. *Norfolk Western Street Railway*, 179 Mass. 449. The effect of laying tracks in an unpaved street manifestly results in the street outside the rails, and particularly the part immediately next to the rails, being unduly worn down, thus imposing on the town in question an additional burden in the repairs of that way. So likewise the space between the rails is subject to a different use from an ordinary road or from the rest of such a road. To require the railway to keep that portion of the way "included between its tracks and for a distance of eighteen inches (18″) outside thereof, at all times flush with the top of the track" and in repair, is in effect to restrict the company from so operating its railway under the location as to cast an additional burden upon the town in respect to repairs of the public ways on which the railway is located and operated. It follows that the restriction as to repairs was and is valid.

We pass to the order directing the defendant to reconstruct its track and roadbed.

The restriction on this matter contained in the grant of location

was as follows : " Said railway company shall reconstruct their track and roadbed by laying down such different material therefor as the board of selectmen, after public hearing, may judge that public safety and convenience requires ; but no radical change in the material of said track or roadbed shall be made until after the road has been in operation one year, except to make necessary repairs."

The order made by the selectmen under the restriction directed the defendant to reconstruct the track and roadbed " by reconstructing said track with new girder rails weighing not less than ninety pounds to the yard and not less than sixty feet in length, and by paving the part of the streets occupied by it under said original location between its tracks and for a distance of eighteen inches outside thereof on both sides, with paving stones," of a kind and set in a way there particularly described, " using in said reconstruction sleepers of chestnut or hackmatack."

The defendant's first contention is that the restriction as to reconstruction contained in the location was void.

The validity of a restriction as to reconstruction was dealt with by this court in the recent case of *Selectmen of Gardner v. Templeton Street Railway*, 184 Mass. 294. But the location in question in that case was granted under St. 1898, c. 578, § 13, which, as we have already pointed out, gives more extended powers than are given in terms to selectmen under Pub. Sts. c. 113, § 7, and expressly provides that the method of construction of the railway may be dealt with in the location. That case therefore is not necessarily an authority here. But that case is an authority for the power to insert a restriction as to reconstruction, if the construction of the railway is a matter which can be dealt with in a restriction in granting a location under Pub. Sts. c. 113, § 7.

We come therefore to the question whether as matter of construction the power given to selectmen by St. 1898, c. 578, § 13, is greater than that given them by Pub. Sts. c. 113, § 7. The present form of St. 1898, c. 578, § 13, now R. L. c. 112, § 7, was suggested by the commissioners appointed under St. 1897, c. 509, whose report is House Document 475 for the year 1898. It is there said that the provision here in question " modifies the

existing law, . . . only in so far as is necessary to make it conform to the interpretation of that law which has in practice grown up." p. 48. See also pp. 22, 23. By this we understand that the commissioners meant to say that the language of the statute is modified, not that the statute has been changed. The question we now have to decide is whether, as matter of construction, the statute was changed by this change in the terms of the act; and we are of opinion that it was not.

The last clause of St. 1898, c. 578, § 13, provides that "all locations heretofore granted or in use are hereby ratified and confirmed, as if accepted under the provisions of this section." This clause was not reported by the commissioners. It is in effect a declaration that the interpretation given in practice to the former act was correct and we are of opinion that the former act should be construed accordingly. It follows that the restriction as to reconstruction contained in the grant of location here in question was valid.

The defendant's next contention is that if this restriction was valid originally it was rescinded by the last clause of St. 1898, c. 578, § 13. We see no ground for this contention. The last part of that clause does not abrogate the first part of it, which we have just decided goes as far as the Legislature could in ratifying the validity of all restrictions which could have been made under § 13.

The defendant's next objection is that the order made under this restriction directing the defendant to pave between its tracks and for a distance of eighteen inches outside thereof on both sides is void. Its contention here is that the defendant's obligation as to maintenance and repair of streets when the location was granted, was prescribed by Pub. Sts. c. 113, § 32, and that no additional burden in that connection could be imposed on it. This is but a repetition of the argument as to repairs, which we have already decided adversely to the defendant, and this contention falls with that argument.

The next contention is that if the restriction as to reconstruction was valid and is in force, the defendant cannot be required to take up the fifty pound T rails specified in the location and lay down ninety pound girder rails in place of them. The ground for this contention is that they are both of the same

"material." There is nothing in this. The case in this connection comes within *Selectmen of Gardner* v. *Templeton Street Railway*, 184 Mass. 294.

By the terms of the reservation

> The defendant shall answer and the case shall stand for trial on the merits.