## MAYOR AND ALDERMEN OF WORCESTER *vs.* WORCESTER CONSOLIDATED STREET RAILWAY COMPANY.

Worcester.   March 27, 1906. — May 17, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, BRALEY, & SHELDON, JJ.

*Street Railway.   Estoppel.   Equity Jurisdiction.   Words,* "Restrictions."

A street railway by complying with the terms of a condition imposed by its grant of location from the aldermen of a city does not lose the right to contest the legality of the condition.

Restrictions imposed by an order of the board of aldermen of a city granting a location to a street railway company under Pub. Sts. c. 113, § 7, that "said company shall lay and maintain paving in and outside of its tracks as follows:" followed by specifications requiring certain kinds of paving "to be laid and maintained" between the rails and for twelve or eighteen inches outside the tracks on certain streets named, and that on two other streets named "the street shall be paved with blocks for the entire width between the curb lines," requires that the paving on the last named streets shall be maintained as well as laid.

The board of aldermen of a city in granting a location to a street railway company under Pub. Sts. c. 113, § 7, have power to impose restrictions requiring the company to pave and maintain in repair the entire surface of streets in which the tracks of its railway are laid, thus exceeding the requirements of § 32 of the same chapter in regard to the portions of streets to be kept in repair by street railway companies.

An obligation to keep in repair the surface of streets in which the tracks of a street railway are laid, imposed on the company by the aldermen of a city under Pub. Sts. c. 113, § 7, in its original grant of location, is preserved and kept in force by St. 1898, c. 578, §§ 11, 13, now R. L. c. 112, §§ 44, 7.

The obligation of a street railway company to maintain in repair the surface of certain streets imposed by the aldermen of a city in its original grant of location under Pub. Sts. c. 113, § 7, will be enforced specifically in a suit in equity brought by the mayor and aldermen of the city under R. L. c. 112, § 100.

BILL IN EQUITY, filed in the Supreme Judicial Court on July 21, 1905, by the mayor and aldermen of the city of Worcester against the Worcester Consolidated Street Railway Company under R. L. c. 112, § 100, to compel the defendant to put in proper repair the pavement upon certain streets in .the city of Worcester as required by the terms and restrictions of the original grant of location granted by the plaintiffs on December 8, 1890, to the Worcester, Leicester and Spencer Street Railway Company, one of the predecessors of the defendant.

Among the terms and restrictions imposed by the order granting the location above mentioned, in the second paragraph of the third section were the following:

"Said company shall lay and maintain paving in and outside of its tracks as follows: On Park and Southbridge streets which are already paved, block paving shall be laid and maintained between the rails and for a distance of twelve inches (12″) outside of the track. On Salem Street or Square, Portland, Madison and Hammond streets, block paving shall be laid and maintained between the rails for a space of eighteen inches (18″) outside of the tracks. On Main and Leicester streets, where there are now two horse railroad tracks, the street shall be

paved with blocks for the entire width between the curb lines. On all other streets covered by this location, cobblestone paving shall be laid between the rails, and flag-stones eighteen inches (18″) wide upon the outside of the track."

The defendant demurred to the bill and assigned the following causes of demurrer:

1. For that the city of Worcester, as a municipal corporation, has no interest in the subject matter of the bill and has no power or control over the defendant, and that the defendant does not owe any duty, and is under no obligations imposed by law, to the city of Worcester.

2. For that the board of mayor and aldermen exceeded their authority in attempting to impose, and had no authority to impose, under the laws in force at the date of granting the location of the defendant's tracks, the term or restriction that the defendant should lay block paving in any portion of any street occupied by its tracks under the order of location.

3. For that at the date of the granting of the location the general laws then in force provided as to the extent of the duty of street railway companies in the matter of paving and repairing streets, and the board of mayor and aldermen had no authority to impose the term or restriction that the defendant should maintain block paving, or any other form of paving or surface material, in any portion of such of said streets as are paved, except the portion of said streets occupied by the defendant's tracks, nor in the case of such streets as are unpaved in any portion thereof except the portion occupied by the defendant's tracks and eighteen inches on each side of the portion so occupied by the defendant's tracks.

4. For that by the general laws now in force the defendant is not required to keep any portion of the surface material of streets, roads and bridges in repair.

5. For that it is the duty of the city of Worcester, and the proper officers of that city, to keep in repair at the expense of the city, highways, townways, streets, causeways and bridges, so that the same may be reasonably safe and convenient for travellers at all seasons of the year.

6. For that the Great and General Court, from which the defendant derived its charter and all its corporate powers, has

by statute relieved the defendant of any duty to keep in repair any portions of streets which it was formerly by law required to keep in repair, and has substituted for such duty a commutation tax or excise tax, a part of which is payable to the city of Worcester, and if the part of the excise tax so payable to the city of Worcester is not sufficient to yield to that city an amount equal to the cost to the city of the work done by it, which it was not by law previously required to do, the Great and General Court has in that statute provided a method for increasing the amount of such tax payable to the city.

7. For that it nowhere appears in the petitioners' bill that the defendant has not duly and punctually paid the excise tax in the manner provided by law.

8. For that it nowhere appears in the petitioners' bill that the portion of the excise tax above referred to has not been sufficient to yield to the city of Worcester the cost of all work done by it, which before the passage of St. 1898, c. 578, the city was not required by law to do.

9. For that there does not appear from the bill to be in the order of location any term or restriction requiring the defendant to maintain any paving on Main and Leicester Streets, or on any of the other streets covered by the location, except on certain portions of Park and Southbridge Streets, where the order of location provides " block paving shall be laid and maintained between the rails and for a distance of twelve inches outside of the tracks," and on certain portions of Salem Street or Square, Portland, Madison and Hammond Streets, where the order of location provides " block paving shall be laid and maintained between the rails and for a space of eighteen inches outside of the tracks."

10. For that it appears by the bill that the paving purporting to be required by the order of location has all been satisfactorily performed by this defendant or its predecessors.

11. For that the plaintiffs have not set out in their bill any facts which entitle them to relief.

The case came on to be heard on July 25, 1905, before *Barker*, J., who reserved it upon the bill and demurrer for determination by the full court, with an agreement of the parties that if the demurrer was sustained the bill was to be

dismissed, and if the demurrer was overruled the defendant might file an answer and the case should stand for hearing on the merits before a single justice.

*B. W. Warren,* (*C. R. Lamson* with him,) for the defendant. The defendant does not contend that the word "restrictions" contained in Pub. Sts. c. 113, § 7, is not broad enough to include maintenance requirements, nor that the specific requirement by the Legislature in § 32 as to the parts of the streets to be maintained in repair by street railway companies negatives the delegation to local authorities of power to impose such requirements. The defendant's contention is that on well known principles of statutory construction, viz. : (a) the history of the statute, and (b) its contemporaneous interpretation, no such power was, as a matter of law, delegated. For the propriety of such a construction see *Simpson* v. *Story,* 145 Mass. 497 ; *Blake* v. *National Banks,* 23 Wall. 307 ; *Church of Holy Trinity* v. *United States,* 143 U. S. 457, 464 ; and *Binns* v. *United States,* 194 U. S. 486.

(a)   History of the Statute.   The origin of the power to grant conditional locations is found in St. 1864, c. 229, § 14. The same statute contains in § 18 the origin of Pub. Sts. c. 113, § 32.   This legislative requirement created by St. 1864, c. 229, § 18, was enlarged by St. 1866, c. 286 ; diminished, and varied according to the character of the streets, by St. 1871, c. 381, § 21 ; confined to surface material only by St. 1881, c. 121 ; and re-codified by Pub. Sts. c. 113, § 32.   During the entire period of these changes the power originally given to locate subject to restrictions remained unchanged.

When the Legislature declined, in 1864, to delegate to local authorities the power to impose maintenance requirements, by rejecting the amendment, then offered, that the part of the streets to be kept in repair should be such " as shall be deemed just and equitable by the mayor and aldermen of cities and selectmen of towns," which amendment, if adopted, would have delegated the exact power alleged to exist in this case, (Leg. Doc. of 1864, House 185,) the Legislature showed that it intended itself equitably to adjust the amount of street maintenance work to be done by street railway companies.   This purpose is further shown by the report on the petition on which

St. 1866, c. 286, was passed, summarizing that petition as "asking for a law to authorize the city to impose a tax on horse railroad corporations to cover the increased cost of keeping the streets in repair." (Senate Doc. 226 of 1866.) By St. 1871, c. 381, §§ 58, 60, limiting all rights and liabilities of street railway companies to the provisions of that statute, this legislative intention was again affirmed.

(b) Contemporaneous Construction. In 1871 the companies running into Boston represented over four fifths of the total length of street railways and over nine-tenths of the total business done by such companies. From Boston Pub. Doc. 100 of 1895 it appears that three hundred and thirty-nine locations were granted after St. 1871, c. 381, of which only four contained any mention of street repairs, and those merely called for compliance with the general law. This construction of the law, shown by the conduct of the Boston aldermen, is confirmed by the Attorney General's Report, January, 1901, p. 61, by 19 Railroad Commissioners' Report, 173, 174, by 27 Railroad Commissioners' Report, 111, and by Report of Redfield, Commissioner, to this court, Suffolk County Clerk's office No. 312 of 1863.

*A. P. Rugg,* for the plaintiffs.

BRALEY, J. The demurrer admits the substantial allegations of the bill, by which without rehearsing its entire statutory title the defendant is described as a corporation duly organized to operate, and actually operating a system of street railways a part of which is located within the municipal limits of the city of Worcester. By purchase it has lawfully succeeded to all the rights and franchises formerly granted to the Worcester, Leicester and Spencer Street Railway Company, one of its predecessors in title. St. 1893, c. 338. St. 1897, c. 269. At the date of transfer the tracks of this railway were laid, and the road operated in the public ways described in the bill under an original location regularly granted by the board of aldermen subject to certain restrictions, which, among other provisions not involved in the present controversy, required the company to lay and maintain paving within these streets according to certain specifications to which we shall refer later. Whatever questions may now arise over the construction or validity of

this part of the order, the company complied with its terms, although by compliance neither it nor the defendant is estopped to contest its legality. *Keefe* v. *Lexington & Boston Street Railway,* 185 Mass. 183, 185. Under the construction most favorable to the defendant the company was to assume the expense of paving where the streets were unpaved, for the full width of two streets, and between the track or tracks, and for a limited distance outside of the rails as to the remaining streets, and also to repave with the same material the streets already paved, but the surface of which would have to be removed in the construction of its roadbed.. This section of the order, however, is more comprehensive, for the opening words of the second paragraph, "shall lay and maintain paving," indicate a broad purpose, and to overcome their inclusiveness the defendant contends that by the particular description of streets, and the kind of pavement to be used that follows, this general requirement is limited to paving only, and excludes the cost of subsequent maintenance. If one of the objects to be accomplished was the original paving, or repaving of these streets, their subsequent maintenance would call also for an expenditure by the city to keep them in proper repair. That by reason of their use by the company they would be subjected to an increased servitude, which ordinarily would require more frequent or extensive repairs entailing corresponding expense, well may have been considered by the board when settling the conditions of the grant.

If possible all the terms of a written instrument are to be given effect, and this sentence may be considered as fairly indicative of the final determination of the aldermen, while the sentences which follow are to be viewed as in the nature of specifications defining the quality of the material and the extent of the work, and, although in one instance repeated, to declare in connection with each group of streets that when laid the pavement should be kept in repair by the company was unnecessary as this general provision already had been sufficiently stated. Even if there was a seeming repugnancy between the principal and subordinate clauses, the last would have to yield, because if given the effect for which the defendant contends these clauses would defeat the plain purpose which had been

already sufficiently declared. *Morrill & Whiton Construction Co.* v. *Boston*, 186 Mass. 217, 220. It also is a principle of construction that if uncertain or ambiguous terms are found in a statute or written instrument conferring a public grant they are construed strictly against rather than in favor of the grantee, and, unless by omission of all reference to the subject or by an explicit statement to the contrary, the city should not be required to assume a more onerous burden when manifestly intending to place it upon the company, unless expressed by the order in unmistakable language, which we do not find. *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 446, 449. *Attorney General* v. *Jamaica Pond Aqueduct*, 133 Mass. 361, 365. *Commonwealth* v. *Boston Terminal Co.* 185 Mass. 281, 287.

. The position, however, is taken that if this construction is adopted the obligation imposed either to pave or to maintain is unenforceable as the board of aldermen were not empowered to impose such restrictions, or to exact their performance, and the most important part of the able and learned argument of counsel for the defendant is addressed to this question. When the location was granted, Pub. Sts. c. 113, was the law governing such grants. Under the provisions of § 7 the board of aldermen and selectmen of towns were authorized to grant original locations to street railway companies subject to such "restrictions" as they deemed the public interest required. This word is used in connection with a grant of an interest in real property in a sense analogous to " conditions," and either term may denote a limitation upon the full and unqualified enjoyment of the right or estate granted. *Skinner* v. *Shepard*, 130 Mass. 180. *Ayling* v. *Kramer*, 133 Mass. 12. *Clapp* v. *Wilder*, 176 Mass. 332. In the St. of 1898, c. 578, § 26, which repealed Pub. Sts. c. 113, § 7, this construction was apparently adopted by the Legislature in § 13 as " restrictions " disappear, and the phrase " terms, conditions and obligations" is substituted. But even if having this legal and statutory signification, the inquiry whether the conditions could be legally incorporated with the order of location by way of regulating the manner in which the franchise was to be enjoyed is not changed. It was not until the St. of 1864, c. 229, that the first general law con-

cerning street railways was enacted.  The earlier acts granting charters of incorporation usually contained provisions more or less general as to any obligation of the corporation to keep the highways in which tracks were laid in repair.  Of this class of requirements the act incorporating the Worcester Horse Railroad Company, to whose franchise the defendant has succeeded, is fairly typical.  St. 1861, c. 148.  But the St. of 1864, c. 229, § 18, defined and imposed such an obligation on all companies, and since then as this system of convenient transportation has developed, requiring greater solidity of construction with heavier equipment, especially since the change in motive power from horses to electricity, further consideration has been given to the subject, and corresponding legislation from time to time has been passed.  St. 1866, c. 286.  St. 1871, c. 381, § 21.  Pub. Sts. c. 113, § 32.  St. 1898, c. 578, § 15.  R. L. c. 112, § 44. The St. of 1871, c. 381, being a general act concerning street railway corporations, codified previous statutes.  In § 14 under the subordinate title of location of road, re-enacted in Pub. Sts. c. 113, § 7, with a marginal designation of like import, is found the origin of the right then expressly given to grant a restricted or conditional location.  The nature of such restrictions not having been specifically defined, the defendant argues that by implication an obligation to replace or to maintain in repair by any method the surface of the street, whether paved or unpaved, was not included, as this duty, so far as deemed expedient, was already specified and imposed in § 21 of the original act and by Pub. Sts. c. 113, § 32, and consequently the Legislature never intended to delegate authority to impose additional requirements.  But the context of § 7 is extensive, for the restrictions are to be such as " the interests of the public may require," and are unlimited in scope.  The law making power well might say we have prescribed generally certain conditions as to the repair of the public ways with which street railway companies must comply, but if when granting a location the local authorities are convinced that the latter section is inadequate to equitably adjust and establish the extent of the burden of placing, and thereafter keeping, the surface of the streets in suitable repair owing to the increased wear to which they are subjected by the company, and that more burdensome restrictions are

required for the benefit of the city or town or of the travelling public, they may be imposed by them. There is no inconsistency under this construction between the two sections, which thus are brought into harmony, for if § 7 is first in ordinal number, still it may be treated as supplementary to § 32 for the purpose of ascertaining the intention of the Legislature. *Opinion of the Justices,* 22 Pick. 571, 573. *Commonwealth* v. *McCaughey,* 9 Gray, 296, 297. *Commonwealth* v. *Boston Terminal Co.* 185 Mass. 281.

If the primary duty of maintaining the public ways within their limits in proper repair never shifts from a city or town, yet in granting a franchise the acceptance of which is not compulsory, the aldermen or selectmen in the exercise of a reasonable discretion and judgment could require under § 7, as a condition, that a more extensive share in the expense of repairing such ways when occupied by its tracks, than that required by § 32, should be borne by the petitioning company. The entire requirements of the third section of the order accordingly must be held as having been within the jurisdiction of the board of aldermen, and therefore valid. *Newcomb* v. *Norfolk Western Street Railway,* 179 Mass. 449. *Selectmen of Gardner* v. *Templeton Street Railway,* 184 Mass. 294. *Selectmen of Hyde Park* v. *Old Colony Street Railway,* 188 Mass. 180. *Selectmen of Wellesley* v. *Boston & Worcester Street Railway,* 188 Mass. 250, 253.

But it is further cogently argued that the St. of 1898, c. 578, now R. L. c. 112, § 7, which repealed Pub. Sts. c. 113, § 7, did not recognize or ratify the validity of original orders requiring the surface construction of streets, or of their subsequent maintenance, and which had been passed under the authority of previous statutes, and consequently since the passage of this act the order in this particular becomes a nullity. Upon reference to this statute it is expressly declared by § 11 that " street railway companies . . . shall remain subject to all legal obligations imposed in original grants ", and by § 13, reference again is made to the same subject in the last paragraph, which ratifies and confirms all previous locations which are given validity as if granted under the repealing act. It also recognizes such orders as being in full force and effect subject only to the power of revocation under certain conditions conferred by § 17, upon

boards of aldermen and selectmen. R. L. c. 112, § 7. Instead of destroying conditional locations of this character they were explicitly preserved. *Selectmen of Hyde Park* v. *Old Colony Street Railway, ubi supra.*

Under R. L. c. 112, § 100, this court is given jurisdiction in equity to enforce the order on which the petitioners rely, and a case for equitable relief having been stated the defendant's demurrer must be overruled. *Newcomb* v. *Norfolk Western Street Railway, ubi supra.*

*Decree accordingly.*