## SELECTMEN OF WESTWOOD vs. DEDHAM AND FRANKLIN STREET RAILWAY COMPANY.

Norfolk.    March 31, 1911. — May 19, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Equity Jurisdiction*, To enforce condition in grant of street railway location, Laches. *Street Railway*, Enforcement of terms of location, Regulation of fares.

In a suit in equity brought by the selectmen of a town against a street railway corporation under St. 1906, c. 463, Part III. § 157, formerly R. L. c. 112, § 100, to enforce a condition contained in a location granted by the plaintiffs to the defendant, the enforcement of the terms of the location is not a matter of discretion in which a hardship that the defendant may suffer will be considered, and it is the duty of the court to enforce all valid conditions so imposed.

In a suit in equity brought by the selectmen of a town against a street railway corporation under St. 1906, c. 463, Part III. § 157, formerly R. L. c. 112, § 100, to enforce a condition imposed in a grant of location from the plaintiffs to the predecessor of the defendant, to whose franchises and privileges it had succeeded, that the rate of fare should not exceed the sum of five cents for any distance in one continuous trip within the limits of the town or from any point along the line of the road within the town to its terminus at that time in either of two other towns, it appeared that the location granted by the plaintiffs to the predecessor of the defendant became operative less than one month before St. 1898, c. 578, which deprived local boards of the power to regulate fares, went into effect. *Held*, that the condition imposed on the defendant's predecessor was binding on the defendant, that it was valid, and that its validity was not affected by the last named statute.

In a suit in equity brought by the selectmen of a town against a street railway corporation under St. 1906, c. 463, Part III. § 157, formerly R. L. c. 112, § 100, to enforce a lawful condition in a grant of location from the plaintiffs to the predecessor of the defendant, which is binding on the defendant, requiring that the rate of fare shall not exceed the sum of five cents within the town and to certain termini, it is no defense for the defendant to show that the road although conducted with economy has been operated by the defendant at a considerable loss, that the fares which the defendant has established in excess of the limitation in the grant of location are reasonable, and that, if they are reduced to the rate fixed by the grant, the service must be curtailed and the people of this and other towns will be deprived of transportation facilities now enjoyed.

In a suit in equity by the selectmen of a town against a street railway corporation under St. 1906, c. 463, Part III. § 157, formerly R. L. c. 112, § 100, to enforce a lawful condition in a grant of location from the plaintiffs to the predecessor of the defendant, which is binding on the defendant, requiring that the rate of fare shall not exceed the sum of five cents within the town and to certain termini, a delay before bringing the suit of nineteen months after the first violation of the terms of the grant by charging fares in excess of the limitation, during which period there were two further modifications in the schedule of fares and negotiations between the parties, does not constitute laches on the part of the plaintiffs, who are acting as public officers to enforce a public right.

RUGG, J.   This is a petition in equity * by the selectmen of the town of Westwood to enforce compliance with a term of a street railway location as to fares.   The defendant has succeeded to the rights and franchises of the Norfolk Western Street Railway Company.   On August 10, 1898, after the required precedent proceedings by a majority of the directors of the Norfolk Western Street Railway Company, a street railway corporation in process of formation under our laws, an original location was granted to it by the selectmen of Westwood, authorizing it to operate a street railway in certain public ways in Westwood. On August 19, 1898, this location was accepted by the directors of the Norfolk Western Company, " subject to all conditions and restrictions therein contained."   A certificate of organization creating the Norfolk Western Street Railway Company a corporation was issued on September 23, 1898.   One clause of the location was " The rate of fare shall not exceed the sum of five (5) cents for any distance, in one continuous trip, within the limits of said town, or for a continuous trip from any point along the line of said road in said town of Westwood to its present terminus in Medfield, or to its terminus in Dedham."

It does not appear under what provision of law the defendant succeeded to the location granted to the Norfolk Western Street Railway Company.   We are not aware of any special act authorizing it.   In each of the ways permitted in the general law, by sale or consolidation under §§ 52, 53 and 54 and at receiver's sale under §§ 144 and 145, of St. 1906, c. 463, Part III., the right acquired by the succeeding company is no more extensive or less onerous than that of the original company as to locations. In January, 1908, the rate of fare was raised above the limit prescribed in the location, and although changed several times since then, has been maintained higher than there provided. Before 1908 the road had been operated at a considerable loss for a number of years, and notwithstanding the practice of strict economy an indebtedness of several thousand dollars was accumulated.   Since then its deficit has increased, although there have

---

* Under St. 1906, c. 463, Part III. § 157, formerly R. L. c. 112, § 100, filed in the Supreme Judicial Court on August 12, 1909.   The case was heard by *Sheldon,* J., who at the request of the parties reported it for determination by the full court.

been no allowances for depreciation and only necessary repairs have been made.

The law governing the formation of street railway companies and the granting of locations to them in force at the time was Pub. Sts. c. 113.  It has been decided that under this statute a restriction in an original location fixing the maximum fare to be charged for a locality covering three towns was a valid exercise of power by the selectmen, and when accepted by the directors of the street railway company became as binding upon the corporation as if inserted in a special charter of incorporation, that subsequent legislation has not undertaken to abrogate or modify the force of such restrictions, and that they are binding upon another company succeeding to the franchises and privileges of the original company.  *Selectmen of Clinton* v. *Worcester Consolidated Street Railway*, 199 Mass. 279.  It is there pointed out also that the earlier cases of *Keefe* v. *Lexington & Boston Street Railway*, 185 Mass. 183, and *Selectmen of Wellesley* v. *Boston & Worcester Street Railway*, 188 Mass. 250, arose under different and more recent provisions of law and are not inconsistent with this view.  The location now under consideration became operative less than one month before St. 1898, c. 578 went into effect, which among other matters marked a change in the policy of the Legislature upon the subject of fares and deprived local boards of the power to regulate fares theretofore possessed by them.  But there always must be some instant of time when every alteration of statute takes effect, and up to that instant the pre-existing law prevails with as much force as it ever had.

The defendant urges that the road is operated with economy, and that the fares charged are reasonable and are about the same as the average charged by other street railways in the State, and that the management of the railway has not acted arbitrarily or without consideration to the convenience of its patrons in making successive small increases in fares in the hope of meeting expenses and has offered to elect one of the plaintiffs to its board of directors, and that out of regard to these considerations, the court ought in its discretion to refuse to grant the relief prayed for.  The court is clothed with jurisdiction to enforce the terms of locations on petitions in equity

by selectmen.   Ordinarily the exercise of a judicial power con-
ferred for the benefit of any class of persons or the public is not
discretionary, but obligatory when an infringement of right is
shown.   It is a part of the Constitution that this Common-
wealth is established "to the end it may be a government of
laws and not of men."   The preservation and protection of
a right established under the law of the land is not discre-
tionary, but compulsory upon the courts.   That it may appear
to work hardship in some directions is no reason why they should
not act.   While in the exercise of equity jurisprudence there is
a considerable field necessarily left to the exercise of a sound
judicial discretion, the present is not a case of that kind.   There
is nothing in the statute under which this petition is brought
(St. 1906, c. 463, Part III. § 157) to indicate that any exception
to the general rule was intended.   If, therefore, the plaintiffs
make out a violation of a valid restriction these circumstances
constitute no reason for not granting the remedy afforded by the
Legislature for such cases.

It also is argued that if the rates of fare now charged are re-
duced, the inevitable result will be that the service will be cur-
tailed, and thus the people of this and several other towns,
through which run the tracks of the defendant and its affili-
ated railway, will be inconvenienced and deprived of transpor-
tation privileges now enjoyed by them.   However much these
consequences might appeal to the sound judgment of a public
board in deciding upon a course of conduct, they do not consti-
tute a legal defense to an established right.

The defense of laches cannot prevail.   An interval of about
nineteen months elapsed between the first charge of fares in
excess of those stipulated in the location, during which two
further modifications in the fare schedule were made.   There
is no inflexible rule as to what constitutes laches, and each case
depends upon its own facts.   There would be a strong argument
that, even if private obligations alone were involved, this delay
in the light of the negotiations between the parties and the other
circumstances did not constitute laches.   The significance of
delay arises when good conscience demands action.   *Stewart* v.
*Finkelstone*, 206 Mass. 28.   But in bringing a suit of this sort, as
in granting a location, the selectmen act as public officers and not

as agents of the town. They are not seeking to protect a private interest, but to enforce a public right, the benefits of which may not be confined to a municipality of which they are officers. Laches is not commonly imputed to public officers in respect of their governmental functions or as representatives of the sovereignty. *County Commissioners, petitioners,* 143 Mass. 424, 433. *Fairbanks* v. *Mayor & Aldermen of Fitchburg,* 132 Mass. 42. See *Gaussen* v. *United States,* 97 U. S. 584; *United States* v. *Insley,* 130 U. S. 263.

There is nothing to indicate a waiver, even if it be assumed, which we do not intimate, that the doctrine of waiver can apply to such a restriction as that here sought to be enforced. Waiver is an intentional relinquishment of a known right. The selectmen do not appear to have done anything to indicate an intention not to maintain the public right.

The defendant is not compelled to operate its road at a loss. But so long as it continues to exercise the privileges conferred upon it by the location, it must do so subject to all the burdens thereby imposed. *Mandatory injunction to issue.*

*E. C. Jenney,* for the plaintiffs.

*F. W. Eaton,* (*A. C. Burnham* with him,) for the defendant.