BOARD OF SURVEY OF ARLINGTON *vs.* BAY STATE STREET
RAILWAY COMPANY.

Middlesex.   March 20, 1916. — June 21, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Street Railway.   Public Service Commission.   Municipal Corporations,* Officers
and agents.   *Estoppel.*

In granting locations for street railways, the appropriate boards of towns and
cities are public officers and not agents of their respective municipalities.

The Legislature has the power to change or to abrogate, to the loss of the munici-
palities, the terms and conditions contained in locations granted to street rail-
way companies by the appropriate boards of towns and cities, although such
grants of locations are phrased in the form of contracts and secure valuable
financial obligations to the municipalities.

Under the provisions of St. 1913, c. 784, §§ 17, 19–22, 29, the public service com-
mission have power to grant a petition by a street railway corporation to increase
its rate of fare between certain adjoining towns so that it shall exceed five cents,
although such increase is in abrogation of a condition or contract contained in
a grant of a location to the corporation by the selectmen of one of the towns in
1897 to the effect that the fare charged for transportation between any point
in that town and any point in the town adjoining never shall exceed five cents.

It was not necessary in the present case to determine *whether,* under the provisions
of the above statute, the public service commission has power to abrogate a
condition or contract contained in such a grant of location so that the rate of
fare would be less than that therein agreed upon.

By the enactment of the above named statute the Legislature waived whatever
conditions or contracts were made by the appropriate municipal boards, who
were public officers, and the street railway corporations in the granting and
accepting of the locations, and therefore street railway corporations are not
estopped from seeking from the public service commission permission to estab-
lish fares which are in excess of those agreed upon in such conditions or contracts.

BILL IN EQUITY, filed in the Supreme Judicial Court on Novem-
ber 6, 1915, by the members of the board of survey of the town
of Arlington, who under St. 1904, c. 3, § 5, succeeded to the duties
of the board of selectmen, among other things, in matters affecting
street railways.

The defendant demurred, and the case was reserved by *Braley,*
J., for determination by this court.

St. 1913, c. 784, §§ 17, 19–22, 29, referred to in the opinion, are
as follows:

"Section 17.   All charges made, demanded or received by any

common carrier subject to the supervision of the commission for any service rendered or performed, or to be rendered or performed by it or in connection therewith in the conduct of its common carrier business, or made, demanded or received by any two or more common carriers joining in rendering or performing any service shall be just and reasonable, and every such common carrier and any two or more such common carriers joining in rendering or performing any service shall be entitled to make, demand and receive just and reasonable charges for any such service, and every unjust or unreasonable charge is hereby prohibited and declared unlawful; but charges heretofore established and set out in any schedule filed as hereinafter provided shall be deemed *prima facie* lawful until changed or modified by the commission under the powers conferred upon the commission by the provisions of this act, but this provision shall not give to such rates any greater weight as evidence of the reasonableness of other rates than they would otherwise have."

"Section 19. Subject to the powers of the commission to regulate and prescribe rates and charges, a common carrier may make commodity, transit, or other classes of rates. The furnishing by any common carrier of any service at the rates and upon the terms and conditions provided for in any existing contract executed prior to the first day of July, nineteen hundred and thirteen, shall not constitute a discrimination unless the commission shall so determine. The commission shall not be prevented from taking such action as it may deem proper by any commitment or agreement of a common carrier entered into by reason of any requirement or recommendation of any board of public officers acting under delegated authority from the General Court prior to the enactment hereof. Unless the commission shall determine otherwise common carriers shall be permitted, whether required to do so by law or not, to issue mileage, workingmen's, excursion, school, or commutation passenger tickets, or reduced rate tickets for the transportation of children under twelve years of age, or of pupils attending schools, or joint interchangeable mileage tickets, with special privileges as to the amount of free baggage that may be carried under mileage tickets of five hundred miles or more. All season tickets, before issuance, shall be subject to the approval of the commission as to the form thereof and the conditions named therein.

"Section 20. Every common carrier shall file with the commission and shall plainly print and keep open to public inspection, schedules showing all rates, joint rates, fares, telephone rentals, tolls, classifications and charges for any service, of every kind rendered or furnished, or to be rendered or furnished, by it within the Commonwealth, and all conditions and limitations, rules and regulations and forms of contracts or agreements in any manner affecting the same, in such places, within such time, and in such form, and with such detail as the commission may order. In the case of common carriers the forms prescribed for such schedules and the requirements relative to the filing and publication thereof shall conform, as nearly as may be, to the forms prescribed by and the similar requirements of the interstate commerce commission. No common carriers shall, except as otherwise provided in this act, charge, demand, exact, receive or collect a different rate, joint rate, fare, telephone rental, toll or charge for any service rendered or furnished by it, or to be rendered or furnished, from that applicable to such service as specified in its schedule filed with the commission and in effect at the time. Nor shall any common carrier refund, or remit directly or indirectly, any rate, joint rate, fare, telephone rental, toll or charge so specified, or any part thereof, nor extend to any person or corporation any rule, regulation, privilege or facility except such as are specified in the said schedule and regularly and uniformly extended to all persons and corporations under like circumstances for the like, or substantially similar, service. Unless the commission otherwise orders, no change shall be made in any rate, joint rate, fare, telephone rental, toll, classification or charge, or in any rule or regulation or form of contract or agreement in any manner affecting the same as shown upon the schedules filed in accordance with this act, except after thirty days' notice to the commission, which notice shall plainly state the changes proposed to be made in the schedule then in force and the time when such changes shall take effect, and such notice to the public as the commission shall order, to be given prior to the time, fixed in such notice to the commission, for the changes to take effect. The commission for good cause shown may allow changes without requiring the thirty days' notice, under such conditions as it may prescribe, and may suspend the taking effect of changes under the circumstances and in the manner hereinafter provided. At the time when

any changes take effect, they shall be plainly indicated upon existing schedules, or new schedules shall be printed and filed, as the commission may order. Nothing in this act shall be construed to prevent any telegraph or telephone corporation from continuing to furnish the use of its lines, equipment or service under any contract or contracts in force at the date when this act takes effect, or upon the taking effect of any schedule or schedules of rates subsequently filed with the commission, as hereinafter provided, at the rate or rates fixed in such contract or contracts: provided, however, that when any such contract or contracts are or become terminable by notice, the commission shall have power in its discretion to direct by order that such contract or contracts shall be terminated by the telegraph or telephone corporation party thereto, and thereupon such contract or contracts shall be terminated by such telegraph or telephone corporation as and when directed by such order.

"Section 21. Whenever the commission receives notice of any change or changes proposed to be made in any schedule filed under the provisions of this act, it shall have power, either upon complaint or upon its own motion, and after notice, to hold a public hearing and make investigation as to the propriety of such proposed change or changes. Pending any such investigation and the decision thereon, the commission shall have power, by any order served upon the common carrier affected, to suspend the taking effect of such change or changes, but not for a longer period than six months beyond the time when such change or changes would otherwise take effect. After such hearing and investigation, the commission may make such order in reference to any new rate, joint rate, fare, telephone rental, toll, classification, charge, rule, regulation or form of contract or agreement proposed, as would be proper in a proceeding initiated after the same has taken effect. At any such hearing involving any proposed increase in any rate, joint rate, fare, telephone rental, toll or charge, the burden of proof to show that such increase is necessary in order to obtain a reasonable compensation for the service rendered shall be upon the common carrier. If at a hearing involving any proposed decrease in any rate, joint rate, fare, telephone rental, toll or charge demanded by any common carrier, it shall appear to the commission that the said rate, joint rate, fare, telephone rental, toll or charge is insuffi-

cient to yield reasonable compensation for the service rendered, the commission shall have power to determine what will be the just and reasonable rate or rates, fare or fares, telephone rental or rentals, toll or tolls, charge or charges, to be thereafter observed in such case as the minimum to be charged and to make an order that the common carrier complained of shall not thereafter demand, charge or collect any rate, fare, telephone rental, toll, or charge lower than the minimum so prescribed without first obtaining the consent of the commission, not to be given without a public hearing.

"Section 22. Whenever the commission shall be of opinion, after a hearing had upon its own motion or upon complaint, that the rates, fares or charges of any of them demanded, exacted, charged or collected by any common carrier now or hereafter subject to its jurisdiction, for any services to be performed within the Commonwealth, or the regulations or practices of such common carrier affecting such rates, are unjust, unreasonable, unjustly discriminatory or unduly preferential or in any wise in violation of any provision of law, or that the rates, fares or charges or any of them chargeable by any such common carrier are insufficient to yield reasonable compensation for the service rendered and are unjust and unreasonable, the commission shall determine the just and reasonable rates, fares and charges to be charged for the service to be performed, and shall fix the same by order to be served upon every common carrier by whom such rates, fares and charges or any of them are thereafter to be observed. It shall be the duty of every such common carrier to observe and obey every requirement of every such order so served upon it, and to do everything necessary or proper in order to secure absolute compliance with and observance of every such order by all its officers, agents and employees. The commission may, after investigation, authorize a common carrier in special cases to charge less for longer than for shorter distances for the transportation of passengers or property, whenever in the opinion of the commission such authorization is consistent with the public interests, and the commission may from time to time modify or revoke such authorization."

"Section 29. This act shall be deemed and construed as a remedial act and in enlargement and extension of all previous acts and existing laws conferring upon or vesting in the commission any

jurisdiction, powers or discretion with respect to any subject or matter treated in this act. Except as above provided all acts and parts of acts inconsistent with any provision of this act, and all acts and parts of acts which would in any way limit or prevent the exercise to the fullest extent of any of the jurisdiction, powers, authority or discretion delegated herein to the commission are hereby repealed: provided, that nothing herein contained shall be construed to repeal, directly or by implication, the provisions of chapter five hundred of the acts of the year eighteen hundred and ninety-seven, or to authorize the commission to make any order or take any action inconsistent with the provisions of said act or with any rights which have been acquired by any common carrier under any statute prior to the passage of this act."

The case was submitted on briefs.

*P. A. Hendrick*, for the plaintiffs.

*J. F. Jackson & S. E. Wardwell*, for the defendant.

RUGG, C. J.   One of the clauses in the original location granted by the selectmen of the town of Arlington in 1897 to the Arlington and Winchester Street Railway Company, to whose rights, privileges and obligations the defendant has succeeded, was to the effect that "The rate of fare shall not exceed 5 cents from any point in Arlington to any point in Arlington or Winchester, or from any point in Winchester to any point in Arlington, on all lines now or in the future controlled or operated by said Company or by any Company or system of which said road may in the future form a part." The defendant, under the authority of St. 1913, c. 784, §§ 17, 19–22, 29, proposes to raise the rate of fare above five cents, subject to the approval of the public service commission. This suit in equity is brought to enjoin such action by the railway company.

The location here in question having been an original location granted by the selectmen and accepted by the directors of the street railway company before St. 1898, c. 578, took effect, the regulation of fares by agreement as a condition in the grant of the location was within the power conferred by the then existing statute upon the selectmen, and bound the street railway company to the same extent as if inserted in a special charter of incorporation. *Selectmen of Clinton* v. *Worcester Consolidated Street Railway*, 199 Mass. 279. *Selectmen of Westwood* v. *Dedham & Franklin*

*Street Railway,* 209 Mass. 213. In granting locations for street railways, boards of selectmen and boards of aldermen are public officers and not agents of their respective towns and cities. The State exerts its sovereign power through them as its instruments. *Flood* v. *Leahy,* 183 Mass. 232. The Legislature has the power, so far as concerns these public officers and the municipalities by whom they were elected, to change or abrogate the terms of such locations. Although phrased in the form of a contract and securing valuable financial obligations to the cities and towns, the power of the Legislature to modify to their loss such locations has been settled after great consideration and vigorous protest from the interested municipalities. *Springfield* v. *Springfield Street Railway,* 182 Mass. 41. *Worcester* v. *Worcester Consolidated Street Railway,* 182 Mass. 49; *S. C.* affirmed in 196 U. S. 539. See also *Southern Wisconsin Railway* v. *Madison,* 240 U. S. 457. Regulation of fares in this respect stands on no higher ground than requirements as to paving of streets. The paramount power of the Legislature over the subject of fares was recognized expressly in *Selectmen of Clinton* v. *Worcester Consolidated Street Railway,* 199 Mass. 279, at page 288.

The question, therefore, is reduced to one of statutory interpretation. It is whether the general control over fares has been vested in the public service commission by St. 1913, c. 784. That act marked a radical change in the policy of the Legislature in the regulation of street railways. It conferred upon the public service commission far greater powers over the operation and accommodations to be provided by such common carriers than had been vested in any board by earlier acts. Summarily stated, it clothed the commission with full power to require safe, reasonable and adequate service to the public from all common carriers. The authority of the commission as to supervision and regulation in other respects is ample. It is manifest that such broad powers justly cannot be exercised to the extent conferred by the words used except when joined either with equally full power to regulate charges, rates and fares, or with freedom of action by the carrier in these respects, so as to enable the carrier to receive a fair return for the service required. This power expressly is conferred by § 22, which after subjecting the rates and fares actually charged or demanded to their supervision, enacts that whenever the commis-

sion is of opinion "that the rates, fares or charges or any of them chargeable by any such common carrier are insufficient to yield reasonable compensation for the service rendered and are unjust and unreasonable, the commission shall determine the just and reasonable rates, fares and charges to be charged" and shall fix the same by order binding upon the carrier. That these words were intended to be interpreted according to their full natural scope is obvious from the provision of § 29, to the effect that, "This act shall be deemed and construed as a remedial act and in enlargement and extension of all previous acts and existing laws conferring upon or vesting in the commission any jurisdiction, powers or discretion with respect to any subject or matter treated in this act. Except as above provided all acts and parts of acts inconsistent with any provision of this act, and all acts and parts of acts which would in any way limit or prevent the exercise to the fullest extent of any of the jurisdiction, powers, authority or discretion delegated herein to the commission are hereby repealed." It is impossible to give the act a narrow or constricted construction as to the subject of fares.

There is no room for the binding force of stipulations as to fares in original grants of locations by local boards in the face of these sweeping provisions. Such stipulations are extinguished so far as inconsistent with the terms of St. 1913, c. 784. The plain purpose of the Legislature, in recognition of the fact that many street railways operate miles of tracks extending through numerous cities and towns, was to prescribe for the regulation of fares throughout the Commonwealth by a single public board, which may be expected to act with a broad and unbiased view for the promotion of the common good of all the conflicting interests involved and not under the influence of purely local considerations. The statute is a legislative determination that it is unwise and inexpedient longer to permit the full development of interurban transportation by street railways to be hampered by conditions as to fares contained in locations granted by the public officers of different municipalities. This conclusion is confirmed by the provisions of § 19, to the effect that "The commission shall not be prevented from taking such action as it may deem proper by any commitment or agreement of a common carrier entered into by reason of any requirement or recommendation of any board or public

officers acting under delegated authority from the General Court prior to the enactment hereof." See *Keefe* v. *Lexington & Boston Street Railway,* 185 Mass. 183.

It is not necessary to determine what would be the effect of a reduction of fares against the protest of the street railway company below the rate fixed in the location.

This record simply presents a case where the original act of the State performed by the selectmen in granting a location to the street railway company has been modified in respect of fares by the State speaking through the paramount power of the Legislature, and that modification has been accepted by the street railway company. No one else can complain.

No question of estoppel arises on this record. The State acting through its Legislature in enacting the statute has waived in this respect, in view of the adoption of its present policy as to fares, whatever conditions the State acting through the selectmen had imposed in the public interests in the original location. Hence cases like *Rutherford* v. *Hudson River Traction Co.* 44 Vroom, 227, and *People* v. *Suburban Railway,* 178 Ill. 594, upon which dependence is placed by the plaintiffs, have no application.

The plaintiffs rely strongly on *Detroit* v. *Detroit Citizens' Street Railway,* 184 U. S. 368. The irrelevancy of that decision to the facts here presented is demonstrated by *Worcester* v. *Worcester Consolidated Street Railway,* 196 U. S. 539.

While the public policy and statutory history of other States may be so different from that of this Commonwealth that decisions of other jurisdictions are by no means controlling, the conclusion here reached is in harmony with the reasoning of numerous cases. *Milwaukee Electric Railway & Light Co.* v. *Railroad Commission of Wisconsin,* 238 U. S. 174. *Duluth Street Railway* v. *Railroad Commission,* 161 Wis. 245. *Benwood* v. *Public Service Commission,* 75 W. Va. 127. *Public Service Electric Co.* v. *Public Utility Commissioners,* 2 Gummere, 128.

It follows that the subject of fares (with express and possible exceptions not here material) has been placed under the control of the public service commission. Its power is not restrained on the facts here disclosed by the condition in the original grant of location.

*Bill dismissed.*