## In Re Knox County Electric Company.

## Knox.  Opinion May 10, 1920.

*Powers of Public Utilities Commission.  R. S., Chap. 56, Sec. 77.  Constitutional right of the legislature to confer authority on the Commission.  Public officers.  Governmental powers.  Distinction in municipal officers, as public officers, and as agents or servants of their respective towns.*

Pursuant to the provisions of the private and special laws of 1889, chapter 409, the municipal officers of Rockport fixed and determined the route and location of the railroad of Camden and Rockport Street Railroad Company over the streets and ways in the town of Rockport, and determined the distance of the tracks from the sidewalks; the municipal officers granted said location with the following provision: "The condition on which said location is granted is, first, the iron bridge shall be put in repair, strengthened and kept in repair (the foot walks and abutments excepted) so long as said track crosses said bridge, at the expense of said street railroad company." The railroad company duly assented to the said location, constructed its railroad thereon, and has since made such repairs as have been made on the bridge, except as to foot walks and abutments.

On August 15, 1919, the Public Utilities Commission acting under the provisions of R. S., Chap. 56, Sec. 77, enacted in 1895, after due notice and hearing, determined "that said bridge is not safe for the uses to which it is being put, and that such bridge is not susceptible of any repairs, renewals or strengthening which will make it safe for such uses, and that the same may be rebuilt," and did therefore order that said bridge be rebuilt by Knox County Electric Company, and apportioned the expense of such rebuilding equally between the Knox County Electric Company and the town of Rockport.

*Held:*

That the proceedings of the municipal officers in fixing and determining the route and location of the railroad, and the acceptance by the company of the location so fixed and determined, did not constitute a contract for which the town may successfully claim immunity from legislative interference under the contract clause of the Constitution of the United States.

In proceeding under the Act of 1889 the municipal officers were acting as public officers exercising a governmental function, for the safety of the public.

The legislature has power to confer upon the Public Utilities Commission authority to provide for rebuilding the bridge upon terms other than those imposed by the municipal officers, and thus to change the terms upon which the location was granted, to the loss of the municipality.

On exceptions. The Public Utilities Commission, acting under the provisions of R. S., Chap. 56, Sec. 77, after a hearing in the matter of the safety of a highway bridge over Goose River, so-called, and known as "the iron bridge in Rockport," determined "that said bridge is not safe for the uses to which it is being put, and that such bridge is not susceptible of any repairs, renewals or strengthening which will make it safe for such uses, and that the same may be rebuilt," and ordered that said bridge be rebuilt; that the Knox County Electric Company rebuild said bridge, furnishing material and labor, and that the expense of such rebuilding be apportioned equally between the Knox County Electric Company and the town of Rockport. From such findings and determination the town of Rockport took exceptions. Exceptions overruled. Result to be certified by the clerk of this court to the clerk of the Commission.

Case stated in the opinion.

*H. L. Withee*, for town of Rockport.

*A. S. Littlefield*, for Knox County Electric Company.

SITTING: SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, DEASY, JJ.

MORRILL, J. This case is presented upon exceptions by the Inhabitants of the town of Rockport to certain rulings of the Public Utilities Commission upon matters of law.

By chapter 409 of the private and special laws of 1889, certain residents of Camden were constituted a corporation by the name of Camden and Rockport Street Railroad Company, and were authorized to construct, maintain and use a street railroad in that part of Camden which is now within the limits of the town of Rockport, upon and over such streets and ways therein as should from time to time be fixed and determined by the municipal officers of said town of Camden and assented to in writing by said corporation; section 1 of the act further provided that all tracks of said railroad should be laid at such distances from the sidewalks of said town, as the municipal officers thereof should in their order fixing the routes of said railroad, determine to be for public safety and convenience; and that the written assent of said corporation to any vote of the municipal officers of said town, prescribing from time to time the routes of said railroad, should be filed with the clerk of said town, and should be taken and deemed to be the location thereof.

Section 3 of the act provides: "Said corporation shall keep and maintain in repair such portions of the streets and ways as shall be occupied by the tracks of its railroad, and shall make all other repairs of said streets, roads and ways ,which in the opinion of the municipal officers of said town may be rendered necessary by the occupation of the same by said Railroad, and if not repaired upon reasonable notice, such repairs may be made by said town at the expense of said corporation."

Certain other sections of the act empower the municipal officers to make regulations as to rate of speed, removal of snow and ice, and mode of use of tracks, and relate to changes of grade of streets; but the foregoing abstracts from sections one and three define the extent of the authority of the town or the municipal officers over the railroad company, and the extent of the duty of the railroad company, as to repair and maintenance of streets and ways. Such authority and duty were imposed solely by the charter; the general street railroad law of the State was enacted in 1893, and the portion of Sec. 7 of Chap. 58, R. S., relating to the crossing of bridges over tide-waters, was enacted in 1901.

Upon petition for the location of said railroad, the municipal officers of Rockport, on February 11, 1892, fixed and determined the route and location over the streets and ways in the town of Rockport and determined the distance of the tracks from the sidewalks; the municipal officers granted said location with the following provision: "The condition on which said location is granted is, first, the iron bridge shall be put in repair, strengthened and kept in repair (the foot walks and abutments excepted) so long as said track crosses said bridge, at the expense of said street railroad company, and the Berlin Iron Bridge Co. is to be employed to strengthen said bridge."

Upon the same day the railroad company filed its written assent as follows: "The Camden & Rockport Street Railroad Company assents to the foregoing location. Rockport, February 11, 1892. H. L. Shepherd, Pres." In the same year the railroad was constructed across the bridge in question, the bridge having been strengthened by the company, and the railroad company has since made such repairs as have been made on the bridge, except as to foot walk and abutments. So far as the case shows no other action has been taken by the inhabitants of the town of Rockport, or the municipal officers of that town in relation to the location over, or use

of the bridge by the railroad company. Knox County Electric Company has succeeded to the rights and liabilities of Camden & Rockport Street Railroad Company.

On August 15, 1919, the Public Utilities Commission, acting under the provisions of R. S., Chap. 56, Sec. 77, and having given notice as required by that section, instituted a public inquiry as to the safety of the bridge in question, and after hearing determined "that said bridge is not safe for the uses to which it is being put, and that such bridge is not susceptible of any repairs, renewals or strengthening which will make it safe for such uses, and that the same may be rebuilt," and did therefore order that said bridge be rebuilt; that the rebuilding of said bridge, including the furnishing of material and labor, be done by said Knox County Electric Company; and apportioned the expense of such rebuilding equally between the Knox County Electric Company and the Town of Rockport, "the latter being authorized to receive such assistance as is provided by law."

The inhabitants of the town of Rockport contended and now contend:

"1.    That the grant of location by the town, with the conditions attached, assented to by the railway and acted upon by it for the succeeding twenty-seven years, constituted a valid, continuing contract between the parties, placing upon the railway the burden of repairs and strengthening of the bridge, and that this contract was not affected or modified by subsequent legislation.

2.    That the Public Utilities Commission has no authority to modify, by order or decree, the contract between the town and the railway, nor to order any part of the expense of repairing, strengthening or rebuilding the bridge to be borne by the town."

Sec. 77 of Chap. 56 of the Revised Statutes was enacted in 1895, being Sec. 3 of Chap. 72, of the Public Laws of that year; the duties then imposed upon the Board of Railroad Commissioners now devolve upon the Public Utilities Commission.

That the legislature had the constitutional right to confer upon the Commission authority to issue orders and decrees of the tenor issued in these proceedings is not open to question, and that the legislature did by the section in question confer such authority was settled in *Bangor Ry. & El. Co.* v. *Orono*, 109 Maine, 292, 296.

The contract relied upon by the inhabitants of the town of Rockport is based upon the charter of the Camden & Rockport Street

Railroad Company. Assuming as claimed in behalf of the town that the proceedings of the municipal officers in fixing and determining the route and location of the railroad in the streets, and the acceptance by the company of the location so fixed and determined, were binding upon the railroad company, and its successors in title, and constituted a legal obligation on the part of the railroad company to repair and keep in repair the bridge, the fundamental question still remains whether those proceedings constitute a contract for which the town may successfully claim immunity from legislative interference under the contract clause of the constitution of the United States.

The contention of the town of Rockport cannot be sustained. In proceeding under the Act of 1889 the municipal officers were acting as public officers exercising a governmental function, for the safety of the public.

It is settled law that the powers conferred and the duties imposed upon towns in the location, discontinuance, and building of ways and in the repair of highways and bridges are governmental in their nature, a part of the political government of the State; and that the town officials charged with the execution of those powers and the performance of those duties, are public officers, and not the servants or agents of their respective towns. *Small* v. *Danville*, 51 Maine, 359; *Goddard* v. *Harpswell*, 84 Maine, 499; *Woodcock* v. *Calais*, 66 Maine, 234.

An examination of the charter of Camden & Rockport Street Railroad Company discloses that the municipal officers were authorized (a) to fix the route of the railroad and to determine at what distance from the sidewalks the tracks should be laid, for public safety and convenience; (b) to make regulations as to the rate of speed, removal of snow and ice from the streets by the company, and the mode of use of the tracks, as public safety and convenience might require; (c) to require the railroad company to keep and maintain in repair the portions of the streets occupied by the tracks, and to make all other repairs to the streets, roads and ways which in their opinion may be rendered necessary by the occupation of the same by the railroad; and (d) to require the construction and maintenance by the railroad in such form and manner, and with such rails, and upon such grade as they shall direct.

Here are duties to be performed in the interest of public convenience and safety. These are all governmental powers, in respect to

which the town does not stand in any contract relation with the state. *New Orleans* v. *New Orleans Water Wks. Co.*, 142 U. S., 79, 91.    Law. Ed. Bk. 35, Pages 943, 947.    15 Rose's Notes, 898.    *Covington* v. *Kentucky*, 173 U. S., 231, 241.    Law Ed. Bk. 43, Pages, 679, 683.

The Public Utilities Commission has determined that the bridge is not safe for the uses to which it is being put, that it is not susceptible of any repairs, renewals or strengthening which will make it safe for such uses; the situation discloses the supreme necessity for the exercise of the police power.    Assuming that under the condition upon which the location was granted and accepted, the railroad company was obliged to replace the bridge, the question arises whether the legislature, in the exercise of its general legislative power, may not confer upon the Public Utilities Commission authority to provide for rebuilding the bridge upon terms other than those imposed by the municipal officers.    We have no doubt that the legislature had that power.    *Worcester* v. *Worcester Cons. Street Railroad Co.*, 196 U. S., 539.    Law. Ed. Bk. 49, Page 591.    "In granting locations for street railways, boards of selectmen and boards of aldermen are public officers and not agents of their respective towns and cities.    The State exerts its sovereign power through them as its instruments. The legislature has the power, so far as concerns these public officers and the municipalities by whom they were elected, to change or abrogate the terms of such locations.    Although phrased in the form of a contract and securing valuable financial obligations to the cities and towns, the power of the legislature to modify to their loss such locations has been settled after great consideration and vigorous protest from the interested municipalities."    *Arlington Board of Survey* v. *Bay State Street Ry.*, 224 Mass., 463, 469.    The principle seems to be no longer debatable.    *Pawhuska* v. *Pawhuska Oil & Gas Co.*, U. S. Sup. Ct., June 9, 1919.    250 U. S., 394; Law. Ed. Bk. 63, Page 1054.

> *Exceptions overruled.*
> *Result to be certified by the*
> *Clerk of this Court to the*
> *Clerk of the Commission.*