CITY OF BOSTON *vs.* UNION FREIGHT RAILROAD COMPANY.

Suffolk.    March 10, 1902. — April 2, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Union Freight Railroad Company.    Street Railway,* Duty as to repairing streets.

Since October 1, 1898, when St. 1898, c. 578, took effect, repealing Pub. Sts. c. 113, § 32, with the exceptions provided for in § 28 of the first named act, the Union Freight Railroad Company has been under no obligation to keep in repair any part of the streets through which its tracks are laid.

CONTRACT for $21,780.04 expended by the city of Boston in the years 1900 and 1901 in repairing the portions of Atlantic Avenue and Commercial Street occupied by the tracks of the defendant. Writ dated October 23, 1901.

In the Superior Court the case was heard on agreed facts by *Stevens,* J., who found for the defendant, and, at the request of the plaintiff with the consent of the defendant, reported the case for the consideration of this court.

If this finding was right, judgment was to be entered thereon; otherwise, judgment was to be entered for the plaintiff for the full amount claimed, with interest from the date of the writ, or for such other sum as this court might find it to be entitled to.

*T. M. Babson,* for the plaintiff.

*C. F. Choate, Jr.,* for the defendant.

BARKER, J.    The defendant received its charter by a special act of the Legislature passed on May 6, 1872, after the enactment of the general law authorizing the formation of steam railroads without special legislative authority, and two years before the enactment of the general law authorizing the formation of street railway corporations in a similar way. St. 1872, c. 53. St. 1872, c. 342. St. 1874, c. 29. Its charter was granted because of the failure of the Marginal Freight Railway Company to meet the expectations of the public, and contained provisions repealing the charter of the former company and looking to the taking of its tracks by the defendant. St. 1872, c. 342, §§ 6, 7. Leg. Doc. 1872, House, No. 219. The Marginal Company had been chartered by St. 1867, c. 170, and its rights were also affected

by the provisions of St. 1869, c. 461, § 5. Its charter provided that it should have all the privileges and be "subject to all the duties, restrictions and liabilities set forth in the general laws which now are or may hereafter be in force relating to street railway corporations so far as they may be applicable." St. 1867, c. 170, § 1. The charter also had this provision: "Said Marginal Freight Railway Company shall keep in repair, to the satisfaction of the superintendent of streets of the city of Boston, all the paving between the curb-stones of the streets in which their tracks shall be laid." St. 1867, c. 170, § 10. By still another section of the charter the Commercial Freight Railway Company, incorporated by St. 1866, c. 267, with the privileges and subject to the duties of street railways, was authorized to consolidate with and become one corporation with the Marginal Freight Railway Company. St. 1867, c. 170, §§ 6–16. The history of the legislation shows that it was the purpose of the St. 1872, c. 342, that the defendant should have somewhat similar powers and duties with those of the corporation whose charter the statute repealed. See Leg. Doc. 1872, House, No. 219; *Thornton* v. *Marginal Freight Railway*, 123 Mass. 32.

The year before the passage of the defendant's charter the Legislature, by St. 1871, c. 381, had again revised the general laws relating to street railways and in 1872 the general provision as to the repair of streets by street railway corporations was this: "Every corporation, its lessees or assigns, shall keep in repair such portions of any paved streets, roads and bridges as are occupied by its tracks; and when such tracks occupy streets or roads that are not paved, it shall, in addition to the portion occupied by its tracks, keep in repair eighteen inches on each side thereof, to the satisfaction of the superintendent of streets," etc. St. 1871, c. 381, § 21. Between 1867 and 1872 the construction of Atlantic Avenue, in which the defendant's charter gave it the right to lay its tracks, had substituted a wide thoroughfare for the narrow and crooked streets in which the Marginal Company originally had authority to lay tracks, and which it also had authority to widen and straighten. St. 1867, c. 170, §§ 8, 9.

The only motive power which the defendant had the right to use without permission from some public board was horse power,

and this right it derived only from the provision of its charter subjecting it to the laws relating to street railway corporations, a phrase then a synonym with horse railways. In the charter of the Marginal Company the provision was that the cars should be drawn only by horse power, unless the use of other power should be sanctioned by the board of aldermen. St. 1867, c. 170, § 3. In the defendant's charter the provisions are the general one giving it the privileges of street railway corporations, and of other railroad corporations so far as applicable, and this special provision, that "The cars on said road may be drawn during the night by steam power, subject to the regulation of said board of aldermen." St. 1872, c. 342, § 2. This shows that the defendant's charter contemplated the use of the streets by it with horses as in the case of street railways usually.

To have imposed upon the defendant as upon its predecessor the duty of keeping in repair all the paving of the streets between the curbings may well have seemed to the Legislature the exaction of more than would be just. But as the construction and repair of the tracks must of necessity disturb the paving between the rails and near them, and as the defendant could use horse power alone if it should so choose, and could not use steam power except in the night, there were the same reasons to induce the Legislature to require the defendant to do something toward keeping the streets in repair as in the case of the ordinary horse railway. For these reasons we think that the provision of its charter subjecting it to the duties and liabilities set forth in the general laws relating to street railway corporations, made the defendant subject to the provisions of St. 1871, c. 381, § 21, then in force and requiring street railways to keep in repair certain portions of the streets in which they had their tracks. We see no reason why the same provision of the charter did not make the defendant subject to the duties with reference to the repair of streets by street railway companies imposed by St. 1881, c. 121, and by Pub. Sts. c. 113, § 32.

But the provisions of Pub. Sts. c. 113, § 32, have been repealed by St. 1898, c. 578, § 26, "subject to the exception contained in section twenty-eight" of the repealing act, and if the defendant's railway is not within the exception the defendant was no longer under obligation to keep in repair any portion of the streets

when the acts were done on which the plaintiff relies for its cause of action.

The question whether street railways should make a direct payment for their use of the streets to the municipalities in which their tracks are located was brought to the attention of the Legislature by His Excellency Governor Wolcott in January, 1897. Acts and Res. 1897, Gov. Address, p. 644. The result was the passage of St. 1898, c. 578, which provides that street railway companies shall pay certain new taxes the proceeds of which go to the municipalities in which the tracks are located. St. 1898, c. 578, §§ 2-9. The act requires also that the sums received by the municipalities from these taxes shall be applied toward the construction, repair and maintenance of the public ways and the removal of snow therefrom. St. 1898, c. 578, § 10. It also provides that " street railway companies shall not be required to keep any portion of the surface material of streets, roads and bridges in repair, but they shall remain subject to all legal obligations imposed in original grants of locations." St. 1898, c. 578, § 11.

Shortly before the passage of this statute the Legislature had granted to the Boston Elevated Railway Company rights which it did not intend to change or affect by the provisions of St. 1898, c. 578. See St. 1894, c. 548; St. 1897, c. 500, §§ 10, 19, 21. The existence of this grant was the reason for the exception in the repealing section of St. 1898, c. 578. There is no ground for supposing that the exception was intended to have any other effect than to leave the Boston Elevated Railway Company during the term of twenty-five years from June 10, 1897, unaffected by the provisions of St. 1898, c. 578, or to have any effect except in connection with tracks owned or leased by that corporation. To hold that it was intended to keep the provisions of Pub. Sts. c. 113, § 32, in force as to the defendant would be to suppose that the Legislature made as to the defendant a distinction merely fanciful and with no rational foundation. While the language of § 28 with the intention which we give it might have been somewhat different, it is adequate to carry out that intention, and would not have been used if it had been the purpose to provide that all the streets in which the Elevated Railway had tracks, and all street railways in such

streets were to remain subject to the provisions of Pub. Sts. c. 113, § 32.

It has not been contended that the clause in § 11 of St. 1898, c. 578, following that relieving street railway companies from the requirement to keep a portion of the surface material in repair, and forming part of the same sentence, namely, " but they shall remain subject to all legal obligations imposed in original grants of locations " makes the defendant liable in this action. If the defendant had any original grant of a location within the meaning of the clause quoted it must have been the locations given it by the board of aldermen in 1872, in which no obligation was imposed with reference to the care of streets, or its grant of powers contained in the first section of its charter, and the only obligation with reference to the care of streets imposed in that grant is the obligation to obey the general laws in force from time to time ." relating to street railroad corporations, and to other railroad corporations, so far as the same may be applicable."

We are of opinion that whatever obligation the defendant may have been under with reference to the city streets before the time when St. 1898, c. 578, took effect, it has been under no obligation since to keep any part of the streets in repair. It is not liable to the plaintiff for any part of the expense of the work of repairing or repaving streets done under proceedings not begun until the year 1900.

*Judgment for the defendant on the finding.*