## CITY OF SPRINGFIELD *vs.* SPRINGFIELD STREET RAILWAY COMPANY.

Hampden.   September 25, 1901. — July 14, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Equity Jurisdiction,* Mandatory injunction.   *Street Railway.   Constitutional Law.*

In a suit in equity by a city against a street railway company to compel the defendant to remove the rails laid by it in a certain street and to substitute rails of a different kind, it appeared, that a condition imposed by the terms of a grant of location, authorizing the defendant to extend its tracks in the street in question, required that all materials used and all details of construction of the tracks should be subject " to the acceptance of the supervisors of highways and bridges ", who were given general supervision of all highways by the ordinances of the city, and, that the defendant a short time before, without notice of any intended requirement by the supervisors of a new form of rail, had expended a large sum of money in improving its tracks in that street by laying stronger rails and in doing so had dug up a portion of the street, but had restored it to the same condition as before the change.   By accident, and with no intention of violating the law, the defendant, in digging up the street and in substituting the stronger rails, had failed to apply for or obtain the permission of the supervisors.   *Held,* that, if the city had a *locus standi,* it was not entitled under the circumstances shown to a mandatory injunction compelling the removal of the rails.

A condition contained in a grant of location, not original, from a city to a street railway company, requiring a street railway company to macadamize the whole line of location between the rails and eighteen inches outside of them and to keep this surface in repair, is abrogated by St. 1898, c. 578.

In St. 1898, c. 578, § 11, providing, that street railway companies shall remain subject to all legal obligations imposed in original grants of location, an original grant of location is the same thing as an "original location" which is defined by § 1 of the same statute to mean the first location granted to a railway company by a city or town.

St. 1898, c. 578, abrogating conditions as to the repair of highways imposed upon street railway companies in grants of location, not original, is constitutional. *Semble,* that such locations are not contracts between the city or town and the railway company but are in the nature of licenses to use the public ways, *and held,* that, if such locations constitute contracts, they are contracts of such a nature that the Legislature can modify or annul them without violating the constitutional provisions.   Whatever might be the rights of a railway company having an exceptional charter, at any rate, so far as the city or town is concerned, it must be deemed to have acted in behalf of the public in granting locations in the streets and public ways, and the Legislature has the same right to modify or abrogate the conditions on which the locations were granted, that it would have if the Legislature itself originally had imposed the conditions. ·

MORTON, J.    This is a bill in equity to compel the defendant to remove rails laid by it in a portion of Sumner Avenue, in Springfield, and to replace them with other rails of a kind approved by the board of supervisors of highways and bridges of that city; and, also, to compel the defendant to macadamize the surface of another portion of that avenue and to pay the plaintiff the expense incurred by it in macadamizing a portion, which it claims the defendant was under obligation to macadamize.    The case was heard by a judge of the Superior Court who found the facts and reported them, and reserved the case for the determination of this court upon the report and the bill and answer, such decree to be entered as this court should decide.

1. It appears from the report that the board of aldermen in 1895 granted to the defendant a location for the extension of its tracks through Sumner Avenue aforesaid eastwardly from a certain point to Forest Park subject to certain conditions of which one was, " That all materials used and all the details of the construction of said tracks shall be to the acceptance of the Supervisors of Highways and Bridges."    The ordinances of the plaintiff city provide that the supervisors shall have the general supervision of all public highways, streets, avenues and bridges of the city.    The defendant accepted the location and constructed its track in accordance with the terms of the grant.    The rails used were " T " rails and were approved by the board of supervisors.    Those used on the northerly track were of somewhat greater depth and weight than those used on the southerly track. Afterwards, in 1900, the defendant took up the rails of the southerly track and laid rails of the same type, size and weight as those on the northerly track.    The new rails were of the same design and character as the former rails, differing from them only in depth and weight, and were rendered necessary to provide for the safety and comfort of the public in consequence of the increased traffic.    They occupy no greater portion of the street surface than the former rails did, and do not render the highway any less safe, suitable or convenient for travel than it was before.    In making the change the defendant expended a large sum of money, and dug up a portion of the surface of the street but restored it to the same condition in which it was be-

fore the change. It did not apply for or obtain permission from the board of supervisors to dig up the surface of the street, or substitute the new rails, but the omission to do so was accidental and without any purpose to evade or violate the law. It was the purpose of the board of supervisors to harden the surface of the street, which is a wide and much travelled avenue in front of the principal park of the city, and, in order to facilitate travelling, to require the defendant, when the old rails were removed, to substitute a rail known as the grooved rail. It is not found and there is nothing to show that this intention was known to the defendant. The implication would seem to be that it was not. It does not appear when the substitution of the new rails and the work of restoring the surface of the street was completed; but the fair inference from the allegations of the bill is that it was all done before the bill was filed.

The plaintiff contends that the permission of the board of supervisors to the digging up of the street and the substitution of new rails was a condition precedent, and that the defendant, having acted without obtaining it, should be compelled to take up the rails which it has laid on the southerly track and lay such rails as would be acceptable to the supervisors.

The defendant urges various objections to granting the relief which the plaintiff seeks. Amongst others is the objection that the plaintiff has no standing, and that the bill should be brought by the Attorney General, or some other officer representing the public. If we assume, that the city has a *locus standi*, we think, nevertheless, that it is not entitled to have the rails removed. The defendant has incurred large expense in making the change which it has made. There was no intent on its part to evade or violate the law in omitting to obtain the permission of the supervisors. For aught that appears the city authorities stood by and saw the work go on without objection. It is expressly found that the surface of the street has been restored to the same condition that it was in before, and that the new rails occupy no more of the street surface than the former rails did, and do not render it less safe, suitable or convenient for travel than it was before. The only reason urged why the defendant should be compelled to take up the rails because it did not obtain the permission of the supervisors, is that for the purpose of improving

the avenue the supervisors intended to harden its surface, and to require a grooved rail to be laid when the old rails were removed. This does not seem to us to be an adequate reason. No damage is shown, nor any interference with or obstruction to public travel. Even when there is a violation of an established right, a mandatory injunction does not issue as matter of course to compel the restoration of a former situation. *Brande* v. *Grace,* 154 Mass. 210. *Starkie* v. *Richmond,* 155 Mass. 188. *Methodist Episcopal Society* v. *Akers,* 167 Mass. 560.

If we assume that the supervisors could have required a grooved rail to be laid, we are nevertheless of opinion that, under the circumstances shown, the plaintiff is not entitled to an injunction compelling the removal of the rails that were laid.

2. In 1896 the board of aldermen granted the defendant another location in said avenue extending westerly from the former location. This grant was also subject to certain conditions, one of which was in substance that the defendant should pave, macadamize or harden, in such manner and with such materials as the supervisors should direct, the whole line of the location between the rails and eighteen inches outside of them, and should keep the same in repair to the approval of the supervisors, and that if, after it was done, a change should be directed in the material of the paving, macadamizing or hardening, the defendant should make such change in its paving, macadamizing or hardening as the supervisors should direct and keep it in repair. The defendant accepted the location, and constructed its tracks to the approval of the supervisors, paving with cobblestones the part that it was required to pave under the above condition. In 1900, after St. 1898, c. 578, had gone into effect, the city macadamized the street and requested the defendant to do likewise with the part that it was bound to take care of under the condition. The defendant declined, and thereupon the plaintiff macadamized the space outside the rails at an expense of $195.76 which it is agreed is the compensation to be paid by the defendant if the plaintiff is entitled to compensation. Since the passage of St. 1898, c. 578, a tax has been annually assessed upon the defendant and paid to the plaintiff as provided in § 7 of that act. The prayer of the bill on this branch of the case is, that the defendant may be ordered to remove the cobblestones between the

rails, and macadamize and harden that space in such manner as the supervisors may direct, and also may be ordered to compensate the plaintiff for the macadamizing done by it for the space of eighteen inches outside the rails. Neither of the above locations is a part of the original location granted to the defendant in the plaintiff city.

The principal question in regard to this part of the case relates to the effect of St. 1898, c. 578, upon the conditions on which the grant of the location was made. The defendant contends that, even if the conditions were legally imposed, which it denies, the effect of the act of 1898 has been to abrogate them. It also maintains that, on this branch of the case too, the plaintiff has no standing. The plaintiff, assuming that the conditions were lawfully imposed, contends that they are still in force, and that, if the effect of the St. of 1898, is to abrogate. them, it is, in so far as it does that, unconstitutional as impairing the obligation of contracts.

If there is a contract, as the plaintiff contends, which we do not intimate, it would seem to be between the plaintiff and defendant, and the plaintiff would seem to be the proper party to enforce it. See *Lowell* v. *Proprietors of Locks & Canals*, 104 Mass. 18. We therefore assume, as before, that the plaintiff has a *locus standi*. We also assume, without deciding, that the conditions were lawfully imposed. This accords with what is said by the special committee, appointed by St. 1897, c. 509, to investigate the subject of the relations between street railway and municipal corporations, and whose report it is agreed may be referred to, to be the practice and the usual view — meaning, of course, in this State.

We come then to the effect of the statute of 1898 upon the condition in question, and it seems to us that the statute abrogates it. The statute is entitled, "An Act relative to Street Railways." But it is plain from the act itself, and from its history, that it was intended to put and does put the relations between towns and cities on the one hand and street railway companies on the other upon a new footing in regard to the repair and care of the streets and highways in which the tracks of street railways are or may be located. It repeals Pub. Sts. c. 113, § 32, which expressly provides that street railway com-

panies shall keep in repair the portion occupied by their tracks, and it also repeals so much of § 27 of the same chapter as relates to the removal of snow and ice.   St. 1898, c. 578, § 26. It enacts in so many words that " Street railway companies shall not be required to keep any portion of the surface material of streets, roads and bridges in repair," (St. 1898, c. 578, § 11,) and provides that the corporation taxes assessed upon street railway companies shall be paid to cities and towns in proportion to the length of tracks operated by them therein, instead of according to the residence of the stockholders as before, and that the same shall be expended in the maintenance, construction and repair of the public ways and the removal of snow therefrom.   St. 1898, c. 578, §§ 4, 10.   It further provides for the payment of an excise tax on the gross receipts which is to be applied in the same way, and is accompanied by a provision for readjustment so as to make the amounts paid correspond to the cost to the city of doing work previously done by the company.   St. 1898, c. 578, §§ 7, 10.   The report of the special committee, which was before the Legislature, makes it still plainer, if that were necessary, that the object of these various provisions was to commute into money payments to cities and towns the burdens previously imposed upon street railways in regard to the care of the streets, and there can be no doubt, we think, that if the provisions to which we have referred stood alone, the effect of the statute would be to abrogate the conditions on which the location was granted.   But the provision previously quoted from § 11, that the companies shall not be required to keep any portion of the surface material in repair, is immediately followed by the words " but they shall remain subject to all legal obligations imposed in original grants of locations," and it is further provided in § 13 that " All locations heretofore granted or in use are hereby ratified and confirmed, as if accepted under the provisions of this section, and shall continue in force, subject only to revocation as provided in section seventeen, and to all provisions, restrictions, regulations or conditions, applying to all street railways under the general law as now in force except so far as changed or modified by this act."   The plaintiff contends that the effect of these provisions is to keep the conditions in force.   But it is to be noticed that it is " legal obligations imposed in original

grants of locations" to which the companies are to remain subject.   And in the first section of the act it is provided that " An ' original location ' of a company in any city or town shall mean the first location granted to it in such city or town."   We think that " original grant of location" is the same thing as " original location " or " grant of original location."   In the present case the location to which the condition was attached was not the first location of the defendant company in Springfield, and therefore not an original grant of location.   It was not even the first location in Sumner Avenue.   It was an extension of a location which had already been granted in that avenue.   And therefore the clause in regard to " legal obligations " which we have quoted from § 11 is not applicable to the case before us.   That there is a difference between an " original location " and an extension or alteration of a location is plainly shown by the provisions in regard to extensions and alterations in §§ 15 and 16.   In the report of the special committee the reason for this difference is given.   Report of Special Committee on Relations between Cities and Towns and Street Railway Companies, House Document, No. 475, pp. 23, 49.

The manifest purpose of what we have quoted from § 13 is to preserve and confirm to street railway companies locations previously granted, and to continue in force such provisions, restrictions, conditions and regulations as were applicable by general law to all street railway companies except so far as changed or modified by this statute.   It has nothing to do with the effect of other provisions of the statute upon the terms and conditions on which such locations have been granted, except possibly in cases, if there are any such, where the terms and conditions embody general provisions that are continued in force, and it expressly saves from its operation changes in such general provisions, of which that in reference to repair of streets is one, made by this act.

We think, therefore, as already observed, that the statute abrogates the conditions relied on.   See *Boston* v. *Union Freight Railroad*, 181 Mass. 205.

The remaining question is whether this can be done consistently with the constitutional provision against impairing the obligation of contracts.   It seems to us that the locations, given

to street railway companies in public streets by cities and towns in this Commonwealth, do not constitute contracts, or if they do, that they are of such a nature that the Legislature can modify or annul them without thereby violating the constitutional provision. Except over private premises, they are, it seems to us, in the nature of a privilege or permit to use the public ways given by cities and towns by virtue of authority from the Legislature for the purpose of facilitating public travel and accommodation. See *Attorney General* v. *Metropolitan Railroad*, 125 Mass. 515.

They are analogous to licenses given to run omnibuses along certain routes, though, of course, to make the analogy complete the omnibuses would have to be built so as to run on rails laid in the streets. St. 1847, c. 224. They convey no exclusive rights in the highways or streets in which they are granted, but are to be used in common with others having occasion to use the public ways. The public authorities retain in the main full control over the streets or ways in which they exist, and may revoke the locations, or alter or discontinue the ways without liability to damages therefor, and subject only to such limitations, if any, as the Legislature may see fit to impose. No doubt the Legislature could have granted the defendant the right to lay tracks in the streets of Springfield or have authorized the plaintiff to grant it in such terms that when accepted they would have constituted a contract between the plaintiff and defendant. But it has not done so. And there is nothing in the charter of the defendant company or the amendments thereto which renders its case an exception to the policy which has hitherto prevailed in this Commonwealth. St. 1868, c. 63. St. 1873, c. 149. St. 1887, c. 76. Indeed the company does not contend that its rights are contractual. That is the contention of the city. It is possible that the rights of the company in locations granted to it might stand on a different footing from the rights and obligations of the city in regard to such locations. But, however that may be, there is nothing in the legislation which we are considering which would be open to objection on the part of the company as violating the obligation of contracts, since its charter expressly provides that it shall be subject to all duties, restrictions and liabilities set forth in all general laws

whether then or thereafter in force relating to street railroads, except as therein provided. And it is settled that, under the power thus reserved, this legislation would come within constitutional limits so far as the company is concerned. *Sioux City Street Railway* v. *Sioux City*, 138 U. S. 98.

So far as the city is concerned it must be deemed to have acted in behalf of the public and not in virtue of any private or proprietary rights, and the Legislature has the same right to modify or abrogate the conditions on which locations in the streets and public ways have been granted that it would have if such conditions had been originally imposed by it. *New Orleans* v. *New Orleans Water Works Co.* 142 U. S. 79.

The result is that we think that the bill should be dismissed.

*Bill dismissed.*

*W. G. McKechnie*, for the plaintiff.
*W. H. Brooks & J. Barnes*, for the defendant.