### CITY OF WORCESTER *vs.* WORCESTER CONSOLIDATED STREET RAILWAY COMPANY.

### AND FOUR OTHER CASES BETWEEN THE SAME PARTIES.

Worcester.   January 17, 1902. — July 14, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Street Railway.   Constitutional Law.*

St. 1898, c. 578, freed street railway companies from all obligation to keep any portion of the surface material of streets, roads or bridges in repair, unless the obligation to repair was imposed in a grant of original location, defined in that act to be the first location granted to a railway company by a city or town; and having this effect the act is constitutional. Following *Springfield* v. *Springfield Street Railway, ante,* 41.

BARKER, J. One of these cases is an action of contract brought to recover expenses incurred by the city in renewing or repairing the pavement or other surface of some of its streets in which are tracks of the defendant. Two of the cases are petitions for writs of mandamus to compel the railway company to maintain

and keep in proper repair certain portions of the petitioner's streets. The other two cases are bills in equity asking for similar relief.

The action of contract comes here by the plaintiff's appeal, the defendant's demurrer having been sustained and judgment ordered for the defendant in the Superior Court. The two equity cases are here upon the plaintiff's appeals from decrees of the Superior Court sustaining demurrers and dismissing the bills. The other two cases were reserved by the Chief Justice for the determination of the full court, with an agreement of the parties that no question of the form of procedure or of the proper parties should be insisted upon.

The question in all the cases is whether the railway company since the passage of St. 1898, c. 578, has been under the legal obligation to maintain and keep in repair the paving or surface material of certain portions of certain of the streets of Worcester in which some of the company's tracks are located.

Towns and cities do not necessarily own the soil of the streets and are not the proprietors of the right to use them for travel. Unless otherwise provided each municipality at its own expense must keep the highways, town ways, causeways and bridges within it in repair. Under the power to make by-laws and ordinances a town or city may to some extent regulate the use of streets by travellers.

The first street railway was authorized in the year 1853. From that time to the passage of St. 1898, c. 578, every company was obliged by the terms of its charter or by general law to keep in repair some portion of the street. See St. 1853, c. 353, § 3, and the other early charters. St. 1864, c. 229, § 18. St. 1871, c. 381, § 21. St. 1881, c. 121, § 1. Pub. Sts. c. 113, § 32. From the year 1864 boards of aldermen and selectmen, in granting locations, have been authorized to impose " such restrictions as they deem the interests of the public may require." St. 1864, c. 229, § 14. St. 1871, c. 381, § 14. St. 1874, c. 29, § 6. Pub. Sts. c. 113, §§ 7, 21.

Before the year 1898 very many street railways had been built not only in the more densely populated places but to connect different places by lines running long distances. Aside from the ordinary property and franchise taxes and the specific obli-

gation imposed by their charters or the general laws to keep in repair some small portion of those streets and bridges occupied by their track, the only method of compelling the companies to contribute to the burden imposed upon the municipalities with respect to roads and bridges was the indirect one of imposing obligations upon the company in the guise of restrictions upon grants of locations. In many quarters there was also a feeling that the companies should pay the public for the right to make money by the use of the streets. The result was that many different obligations were imposed on the companies as restrictions in grants of locations, and the grants were accepted and acted upon by the companies.

The situation was called to the attention of the Legislature of 1897 in the annual message of the Governor, with a recommendation that authority should be granted to require " that a direct return should be made to the treasury of the municipality, either by a fixed rental or tax, by a toll upon the cars using the streets or by a percentage of receipts or profits," and that, on the other hand, " the company, under a proper agreement, should, for a limited period, have the assurance that its franchise should not be revoked through caprice, unreasonable hostility or the lure of a higher bid from would-be competitors."

Upon this the Legislature by St. 1897, c. 509, provided for the creation of a commission " to investigate the subject of the relations between cities and towns and street railway corporations, the taxation of street railways and their franchises in this Commonwealth and in other states and countries, and the need, if any, of legislation in this Commonwealth to establish a more fixed tenure of franchises of street railways, and an equitable method of taxing the same."

The report to the Legislature of 1898 was accompanied by the draft of a bill which with a few, but some important, amendments became the St. 1898, c. 578. See Leg. Doc. 1898, House, No. 475.

The report made it clear that very many different obligations, which the report considered as indirect taxes, commonly had been imposed in the guise of restrictions in grants of locations, among which had been that of paving and keeping in repair more of the street than was required by the general law, and also

that there was a serious question whether the imposition of such obligations under the guise of restrictions was valid. The general scheme recommended in the report and embodied in the draft bill was to free the companies from all obligation to keep any portion of the surface material of streets, roads and bridges in repair, and in return to give to the municipalities where the tracks were the benefit of certain new taxes imposed upon the companies.

The Legislature imposed the taxes recommended, but added to the clause which enacts that " street railway companies shall not be required to keep any portion of the surface material of streets, roads and bridges in repair," a declaration that " they shall remain subject to all legal obligations imposed in original grants of locations."

The effect of this legislation was to free the companies from all obligation thereafter to keep any portion of the surface material of streets, roads and bridges in repair, unless the obligation so to do had been imposed in a grant of an original location, which the statute defined to mean the first location granted to the company in the city or town as to whose streets, roads or bridges there might be a question. St. 1898, c. 578, § 1. *Springfield* v. *Springfield Street Railway, ante,* 41. As none of the locations in question in these cases were original locations, the company was relieved by the statute of all the obligations which the city seeks to enforce.

It is contended by the city that it was not within the constitutional power of the Legislature to free the company from the obligations imposed upon it by the locations in question. But this contention is disposed of adversely to the city by the decision in *Springfield* v. *Springfield Street Railway, ante,* 41.

Whether the obligations sought to be enforced originally were valid as " restrictions " within the meaning of the statutes in force when the grants of locations were made is not essential to the determination of these cases, and we express no opinion upon the question.

The result is that in the action at law the order of the Superior Court sustaining the demurrer is affirmed and also the order for entering judgment for the defendant; in the equity suits the decrees of the Superior Court sustaining the demurrers and dis-

missing the bills are affirmed ; in the petitions for mandamus the demurrers are to be sustained and the petitions dismissed.

*So ordered.*

*A. P. Rugg,* (*E. I. Morgan* with him,) for the plaintiff.

*B. W. Warren,* (*I. McD. Garfield & A. J. Peters* with him,) for the defendant.