CITY OF FALL RIVER & others vs. PUBLIC SERVICE COMMIS-
SIONERS & another.

CITY OF FALL RIVER vs. BAY STATE STREET RAILWAY COMPANY.

Suffolk.   Bristol.   October 22, 1917. — December 8, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Street Railway.   Globe Street Railway Company.   Public Service Commission.*

The provision of St. 1898, c. 578, § 11, by which street railway corporations were
relieved from all obligations thereafter to keep any portion of the surface mate-
rial of streets, roads and bridges in repair, unless the obligation to do so had
been imposed in a grant of original location, was not repealed nor superseded
by St. 1911, c. 552, so as to revive the former obligation of the Globe Street
Railway Company to repair the surface of the old Slade's Ferry Bridge in Fall
River, and the successor of that street railway company is not bound to
repair the surface of the bridge named.

Under the power conferred on the public service commission by St. 1913, c. 784,
§§ 20, 21, that commission properly may authorize the successor of the Globe
Street Railway Company to discontinue the sale of six tickets for a sum not
exceeding twenty-five cents, "each of which tickets shall entitle a passenger to
one ride over said company's lines, in this city" of Fall River, although the sale
of such tickets was required as a condition in the grant of location of that
railway company.

PETITION, filed in the Supreme Judicial Court on March 10,
1917, under St. 1913, c. 784, § 27, by the city of Fall River and
its mayor and the president of its board of aldermen against
the members of the public service commission and the Bay State
Street Railway Company praying this court to review, annul,
modify or amend the rulings and order made by the respondent
commissioners on March 6, 1917, permitting the schedule, filed
by the respondent corporation and referred to in such order, to
become effective at the end of the period of suspension fixed by
the respondent commissioners; and

CONTRACT by the city of Fall River against the Bay State Street
Railway Company, as the successor and assignee of the Globe
Street Railway Company, for the alleged breach of a bond under
seal by which the Globe Street Railway Company covenanted to
perform the conditions imposed upon it by an order of the board
of selectmen of the city of Fall River, passed on October 21, 1895,

granting to that street railway company the right to lay its tracks on Slade's Ferry Bridge and through certain streets according to plans on file, the alleged breaches being the failure of the Bay State Street Railway Company to perform the conditions imposed upon its predecessor, the Globe Street Railway Company, by failing to keep in repair the roadway of Slade's Ferry Bridge and by failing to sell six tickets for a sum not exceeding twenty-five cents.  Writ dated March 19, 1917.

In the first case the respondent the Bay State Street Railway Company demurred to the petition and assigned the following causes for demurrer:

"1. That said petition sets forth no ruling or order of the public service commission which is unlawful.

"2. That by the provisions of the general law now in force this respondent may make rates for the service which it performs subject only to the power to regulate and prescribe the same that is lodged with the public service commission, which is given full and complete authority over all rates and charges for services rendered by common carriers, to be exercised notwithstanding any agreement entered into by reason of any requirement or recommendation of any board of public officials acting under delegated authority from the General Court.

"3. That St. 1911, c. 552, was repealed by St. 1913, c. 784.

"4. That the said commutation rate in Fall River if enforced as the petitioners seek to have it does not secure to the respondent a reasonable return for the service rendered and deprives it of its property without due process of law and denies to it the equal protection of the law in contravention of articles 10 and 12 of the Declaration of Rights and the Fourteenth Amendment of the Constitution of the United States."

The first case was heard upon the demurrer of the respondent the Bay State Street Railway Company by *Loring*, J., who made a final decree sustaining the demurrer and ordering that the petition be dismissed.

The action of contract was heard in the Superior Court by *Morton*, J., without a jury.  An agreed statement of facts was submitted as follows:

The board of aldermen of the city of Fall River on October 21, 1895, passed the order described in the above statement.  At the

time of the order, and at the time of the execution by the respondent corporation of the bond mentioned in the plaintiff's declaration, the regular fare duly established in and for the city of Fall River was five cents. After the order of October 21, 1895, the Globe Street Railway Company put in operation its cars over the location therein named, and the cars have continued to be operated over such location by the Globe Street Railway Company and its successor, the Bay State Street Railway Company, up to the present time.

Since St. 1911, c. 552, went into effect, the plaintiff has been obliged to pay $50 to keep in repair the roadway on said bridge and it has not been reimbursed for said sum. Since the enactment of St. 1898, c. 578, and up to the enactment of St. 1911, c. 552, the plaintiff paid all the expense of repairing the roadway of the bridge, and since the enactment of said chapter 552 the defendant has paid all such expense except the $50 above referred to. This location over the Slade's Ferry Bridge was not the first location in Fall River which was granted to the Globe Street Railway Company.

The defendant, Bay State Street Railway Company, has succeeded to the franchises, rights and obligations of the Globe Street Railway Company, which latter road was consolidated with the Brockton Street Railway Company on January 19, 1901, and was consolidated with the defendant on July 1, 1911.

On March 15, 1917, the defendant discontinued the sale of six tickets for twenty-five cents.

The plaintiff offered to prove that the officials and agents of the city of Fall River patronized the defendant street railway company and in the year 1915 the city purchased said four and one sixth cent tickets to the amount of $2,597.85, and in the year 1916 purchased said tickets to the amount of $2,547.25.

The defendant objected to the admission of this evidence but, if admissible, agreed that the facts were as stated.

The judge found the facts to be as stated in the agreed statement of facts and excluded the evidence contained in the plaintiff's offer of proof. He found for the defendant and, at the request of the parties, reported all questions of law arising upon the facts as found by him and the offer of proof for determination by this court, with a stipulation that, if his decision was right, judgment should

be entered for the defendant, and that, if his decision was wrong, the case should be remanded to the Superior Court for such further proceedings as this court might direct.

*A. S. Phillips,* (*G. Grime* with him,) for the city of Fall River.

*S. H. Pillsbury,* for the Bay State Street Railway Company.

BRALEY, J. It appears among the terms of the grant of location to the Globe Street Railway Company, to whose franchises and obligations so far as involved in the cases at bar the defendant company has succeeded, that the company was "to construct, electrically equip, and maintain its tracks . . . on Slade's Ferry Bridge . . . according to the plans on file," subject to the conditions that the company, its successors and assigns "shall, so long as its tracks continue to be on said . . . bridge, keep in repair, at its own expense, all of the roadway of said bridge, for its entire length, to the satisfaction" of the city engineer and the surveyor of highways, and shall furnish a bond "for the faithful fulfilment of the terms and conditions of this order." The order was passed on October 21, 1895, and, the bond having been given and approved and the location having been accepted and continuously used as a part of its railway system, the company and its successors were bound to comply with this condition. Pub. Sts. c. 113, § 7. R. L. c. 112, § 11. *Mayor & Aldermen of Worcester* v. *Worcester Consolidated Street Railway,* 192 Mass. 106, 113, 115.

But, as pointed out in *Springfield* v. *Springfield Street Railway,* 182 Mass. 41, the Legislature may modify or annul a location of this nature without violation of any constitutional provision. By St. of 1898, c. 578, § 11, street railways were relieved "from all obligation thereafter to keep any portion of the surface material of streets, roads and bridges in repair, unless the obligation so to do had been imposed in a grant of an original location, which the statute defined to mean the first location granted to the company in the city or town as to whose streets, roads or bridges there might be a question." *Worcester* v. *Worcester Consolidated Street Railway,* 182 Mass. 49, 52.

The agreed facts show that the location in question was not the first or original location, and neither the company nor its successor was required after the passage of the statute to reimburse the plaintiff city for expenditures in making repairs. The city however contends that the St. of 1911, c. 552, superseded the St. of

1898, c. 578, § 11, by expressly requiring the company and its successors to make such repairs as might be needed. The St. of 1911, c. 552, amends St. of 1910, c. 654, § 6, and when the original and amendatory acts are read in conjunction it is manifest that the St. of 1910, c. 654, § 1, provides solely for "the reconstruction of the joint railroad and highway bridge, commonly known as Slade's Ferry Bridge, . . . the old Colony Railroad Company, its successors or assigns, shall reconstruct said Slade's Ferry Bridge and locate the same at a point northerly thereof, but not exceeding one hundred feet therefrom, in the manner hereinafter stated. . . . The said reconstructed bridge shall be of sufficient width to provide two tracks for the railroad part and also two tracks for street railways on the highway part so that two street cars may conveniently meet and pass each other thereon while going in opposite directions; and due provision shall be made for the acommodation of foot passengers." It is only upon completion of the new bridge authorized by the statute that § 6 as amended becomes operative, and the old bridge built under St. 1872, c. 295, is to be discontinued for "highway and railroad purposes." It is not contended that the new bridge has been built, with the approaches and ways, and opened for use as provided in St. 1910, c. 654, as amended, which contains no repeal of St. 1906, c. 463, Part III, § 79, recodifying R. L. c. 112, § 44, which re-enacted St. 1898, c. 578, § 11. And the St. of 1911, c. 552, is inapplicable, that "Any street railway company owning the tracks on the highway part of the old Slade's Ferry Bridge, shall have the right to lay double tracks on the highway part of said reconstructed bridge and to connect its tracks with the same on both sides of the river . . . subject, however, to all the conditions as to fares and other matters mentioned in the grant of location to the Globe Street Railway Company by the board of aldermen of the city of Fall River . . . on the old Slade's Ferry Bridge, which are hereby approved and confirmed; and all successors or assigns of said Globe Street Railway Company shall be bound by and subject to the said conditions."

The grant of location contained the further condition, the performance of which also was secured by the bond, that the railway company will sell six tickets for a sum not exceeding twenty-five cents, "each of which tickets shall entitle a passenger to one ride

over said Company's lines, in this city, on as favorable conditions as their passengers are now carried.    The fares for passengers without tickets are not to be affected by the above rate for tickets." And this provision has not been complied with by the company since March 15, 1917.    But the St. of 1913, c. 784, with certain exceptions not applicable in the present case placed the subject of fares on all street railways under the exclusive control of the public service commission.    It provides in § 29 that "This act shall be deemed and construed as a remedial act and in enlargement and extension of all previous acts and existing laws conferring upon or vesting in the commission any jurisdiction, powers or discretion with respect to any subject or matter treated in this act," and ". . . all acts and parts of acts which would in any way limit or prevent the exercise to the fullest extent of any of the jurisdiction, powers, authority or discretion delegated herein to the commission are hereby repealed."

The statute being constitutional and the powers of the commission plenary over the regulation and establishment of fares on street railways, independently of whatever conditions may have been imposed in antecedent grants of location by selectmen of towns or municipal boards, *Arlington Board of Survey* v. *Bay State Street Railway*, 224 Mass. 463, 469, the decision under which the "four and one sixth cent ticket sold in strips of six tickets for twenty-five cents in the City of Fall River" was withdrawn and the refusals to give the rulings requested by the plaintiff disclose no errors of law.

If from the allegations of the petition, admitted by the demurrer, it is to be assumed that an order was entered in conformity with the decision, the inquiry under St. 1913, c. 784, §§ 20, 21, whether an increase of fare is necessary "in order to obtain a reasonable compensation for the service rendered," is primarily a question of fact.    It is not limited to any particular part of the system which if operated by itself might be found to be more than self sustaining. And the question whether the company should be permitted to withdraw the commutation tickets called for the exercise of the sound discretion and judgment of the commission, based on the evidence of the company's financial condition, and ability to serve efficiently the public dependent upon the maintenance of its entire system of intercommunication and transportation.    We are

unable to perceive on the record before us any conclusions of fact, in so far as conclusions of fact are involved, which were unlawful. It is only where "any rulings or orders of the commission . . . are unlawful" that this court in equity can "annul, modify or amend" them "to the extent only of such unlawfulness." St. 1913, c. 784, § 27. *Bulkeley* v. *New York, New Haven, & Hartford Railroad*, 216 Mass. 432, 433. The plaintiff, on whom the burden rests, having failed to show reversible error in either the suit in equity or the action at law, the result is that in the first case the decree of the single justice sustaining the demurrer and dismissing the bill should be affirmed with costs of the appeal, and in the second case judgment is to be entered for the defendant.

*Ordered accordingly.*