CITY OF NORTHAMPTON *vs.* NORTHAMPTON STREET RAILWAY COMPANY.

Hampshire.    September 17, 1918. — January 3, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Street Railway. Public Officer. Municipal Corporation,* Officers and agents. *Contract,* What constitutes. *Interest.*

The board of aldermen of a city, in granting to a street railway corporation under the authority given by St. 1874, c. 29, § 11, Pub. Sts. c. 113, § 21, an extension of the location of its tracks in that city and imposing a condition that the corporation "shall maintain and keep in repair such portions of the streets, roads and bridges, respectively, as are occupied by its tracks, and eighteen inches on each side thereof, to the satisfaction of the superintendent of streets," act as public officers and not as agents of the city, and the acceptance of the location by the street railway corporation does not constitute a contract of the corporation with the city that it will comply with the conditions of the grant.

Where a street railway corporation, in compliance with a condition imposed by the grant of an extension of location made to it by the aldermen of a city, has executed and given to the city a bond containing a covenant "that so long as it shall operate said granted extensions of its road it will protect and save harmless the city . . . from any and all loss, cost or damage of every kind, nature or description, which it may at any time suffer by reason [of] the construction and operation of said extensions of its road or of any part thereof," the city may maintain an action of contract against the street railway corporation to recover the defendant's agreed proportion of the expense of maintaining certain bridges upon the granted locations (except the cost of painting) which is in addition to the cost and expense of maintaining in repair the surface material of the bridges and which arises from and is due to the greater wear and strain thereon and the greater deterioration to which the bridges have been subjected by the use of the street railway corporation in addition to that to which they would have been subjected by ordinary travel.

In an action of contract with a declaration containing four counts, purporting to set forth three causes of action, a fifth count, to recover the interest due for the failure of the defendant to meet upon demand its several obligations alleged in the other counts, sets forth no independent cause of action and a demurrer to it on this ground will be sustained.

CONTRACT by the city of Northampton against the Northampton Street Railway Company, the amended declaration containing five counts, which are described in the opinion. Writ dated July 22, 1915.

The defendant demurred to the declaration. The first, second, eighth and ninth causes assigned for demurrer were as follows, the others having been made immaterial by the decision of this court:

"1. That the amended declaration does not state a legal cause of action substantially in accordance with the rules contained in R. L. c. 173.

"2. That the first, second and third counts of the plaintiff's amended declaration are founded on franchises and grants of location, and not on contracts made by the defendant."

"8. That the contract set forth in the fourth count of the plaintiff's amended declaration does not impose upon the defendant any obligation to pay to the plaintiff any portion of the sums expended in repairs on the bridges described in said count.

"9. That the fifth count of the plaintiff's amended declaration sets out no independent cause of action."

In the Superior Court the case was argued on the demurrer before *Aiken,* C. J., who made an order sustaining the demurrer, and, being of opinion that the questions raised by the demurrer ought to be determined by this court, reported the case for such determination.

*J. C. Hammond,* in the absence at the front in France of his son, Captain *T. J. Hammond,* for the plaintiff.

*E. L. Shaw,* for the defendant.

PIERCE, J. By St. 1865, c. 128, the Northampton Street Railway was incorporated under the name of the Northampton and Williamsburg Street Railway Company, and thereby was made subject to the duties, restrictions and liability then imposed by law. One of the obligations so imposed was that it and its lessees or assignees "shall maintain and keep in repair such portions of

the streets, roads and bridges, respectively, as are occupied by its tracks, and eighteen inches on each side thereof, to the satisfaction of the superintendent of streets, . . ." St. 1864, c. 229, § 18.

The selectmen of Northampton accepted the act incorporating the street railway company January 31, 1866, (St. 1864, c. 229, § 12,) and on the same day granted to the street railway company a location which contained no restrictive conditions or agreements other than the requirement that "The position of all said tracks on said several highways to be fixed under the supervision of said selectmen and subject to their direction. And said selectmen further order that the motive power to be used by said company on said tracks, may be horse power and not steam." The street railway company accepted the location and under it built its road, through Elm and Main streets to Florence, which it operated as a horse railway until 1894 when electricity was adopted as a motive power.

In April, 1893, the company was granted authority to construct, maintain and operate the overhead trolley system of electric power in the operation of its cars. It was also granted "extensions of the locations to the Village called Bay State, to the Village called Leeds; and through South Street; and through Bridge Street," subject to conditions and restrictions. Among them was the condition that "Where the said Company's tracks are laid on any bridge in said City, they shall be laid as directed by the Board of Aldermen, and the said Company shall pay one-fourth of expense of maintaining said bridge, except cost of painting." There was also a condition that, "The said Company shall, before any work of construction is commenced, execute, under seal, a contract in the following words, . . . :

"This agreement made this . . . day of . . . , 1893, by and between the Northampton Street Railway Company, a corporation established by law in Northampton, Mass., and the City of Northampton, a municipal corporation in said Massachusetts, Witnesseth: —

"Whereas, the Board of Mayor and Aldermen of said City on the . . . day of . . . , 1893, passed an order permitting said Company to construct, maintain and use the over-head trolley electric system of motive power, so called, in the operation of its cars on its tracks as in said order described and on conditions

therein set forth, to which order reference is to be had, the same being a part hereof to the same extent as if written herein in full.

"Now therefore, for a valuable consideration by it received of the said City, the said Northampton Street Railway Company, hereby covenants and agrees with said city that, so long as it shall operate its cars on said tracks by said system, it will protect and save harmless the city, from all loss, costs, or damages of every kind, nature or description, which it at any time suffers, by reason of the erection, maintenance, and operation of said system or any part thereof. . . ."

In January, 1894, the street railway company was granted a further extension of its location "towards Easthampton and towards Williamsburg; . . . subject to all existing conditions and regulations and subject to the by-laws of this city and the Statutes of the State thereto applicable;" and specifically to the condition that "If in the process of construction of the Williamsburg extension it becomes necessary to strengthen any highway bridge in order to sustain with safety the weight of a street car and its load, it shall be done without expense to the city, and to the satisfaction of the city engineer;" and to the further condition that "The Company shall give to the city a bond, applicable to the present extension, of the same general tenor and form, as the bond given under the acceptance of the franchise granted to it in 1893." The bond last given so far as material was in the following words:

"Now therefore for a valuable consideration received from said City, the said Northampton Street Railway Company hereby covenants and agrees with said City, that so long as it shall operate said granted extensions of its road it will protect and save harmless the City of Northampton from any and all loss, cost or damage of every kind, nature or description, which it may at any time suffer by reason [of] the construction and operation of said extensions of its road or of any part thereof."

The plaintiff, in an action of contract, seeks in count 1 of the declaration to recover of the defendant a sum of money which it alleges it expended in 1914 in keeping in repair that portion of Main Street which was within the tracks as located and eighteen inches outside thereof. In count 2 it seeks to recover, upon the condition quoted above, one fourth of the sum alleged to have been necessarily expended in repairing the structure and floor of

the South Street bridge in 1912. In count 3 it seeks to recover one fourth of the sum alleged to have been necessarily expended in the repair of the structure of three bridges in the village of Leeds. In count 4 the plaintiff declares upon the bond or covenant last above quoted, given to the plaintiff in performance of the condition or restriction upon the enjoyment of the grant of the extension of the location "towards Easthampton and towards Williamsburg" in 1894, alleging that "The bridges situate on said Williamsburg extension and hereinbefore referred to were by reason of the operation of the defendant street railway subject to the greater servitude and to greater wear and deterioration" than they otherwise would have sustained, and seeks to recover one fourth of the sum alleged to have been expended by the plaintiff as set forth in count 3. Count 3 and count 4 are stated to be for the same cause of action. Count 5 seeks to recover interest by way of damages after an alleged demand of payment of the respective items set forth in all the other counts of the declaration. The defendant demurred to the declaration and specifically assigned ten causes of demurrer. The demurrer was sustained generally, and the question raised thereby reported to this court.

Among the causes is, "2d. That the first, second and third counts of the plaintiff's amended declaration are founded on franchises and grants of location, and not on contracts made by the defendant." On this ground, without considering the force of any other of the assigned causes of demurrer, we are of opinion the demurrer to counts 1, 2 and 3 was sustained rightly. The burden of maintaining and keeping in repair the portion of the streets, roads and bridges occupied by the track, and for eighteen inches on each side thereof, was cast upon the defendant by the general law, St. 1864, c. 229, § 18. The extensions of location granted by the board of aldermen of the city of Northampton in 1893 and 1894, presumably were granted upon the authority conferred upon the board of aldermen by St. 1874, c. 29, § 11, Pub. Sts. c. 113, § 21, to authorize the extension of the location of tracks "under such restrictions as they deem the interests of the public may require." The boards of aldermen and boards of selectmen in imposing restrictions and in requiring agreements as conditions of the grant of the location and of the extensions of the location, acted as public officers, and not as

agents or trustees of the city and town respectively. *Flood* v. *Leahy,* 183 Mass. 232. *Cheney* v. *Barker,* 198 Mass. 356, 364. *Board of Survey of Arlington* v. *Bay State Street Railway,* 224 Mass. 463, 469. However beneficial to the plaintiff, the acceptance of the grants subject to the conditions therein contained did not constitute a contract as between the plaintiff and the defendant. It is enough to say that there is no privity of contract between the plaintiff and the defendant. *Selectmen of Clinton* v. *Worcester Consolidated Street Railway,* 199 Mass. 279, 286. See *Boston, petitioner,* 221 Mass. 468, 478; *Springfield* v. *Springfield Street Railway,* 182 Mass. 41, 47; *Attorney General* v. *Metropolitan Railroad,* 125 Mass. 515; *Worcester* v. *Worcester Consolidated Street Railway,* 182 Mass. 49. The remedy of the plaintiff, if any, is in equity. Pub. Sts. c. 113, § 63. St. 1898, c. 578, § 25. St. 1906, c. 463, Part III, § 157.

We think the demurrer to the fourth count should have been overruled. This is an action upon a covenant contained in an instrument under seal, by the obligee or covenantee against the obligor; consequently, it is not and cannot be claimed that the plaintiff and the defendant are not proper parties to the action. The covenant "that so long as it shall operate said granted extensions of its road it will protect and save harmless the city of Northampton from any and all loss, cost or damage of every kind, nature or description, which it may at any time suffer by reason [of] the construction and operation of said extensions of its road or of any part thereof," is broad and comprehensive, and in terms is sufficient to justify the claim of the plaintiff that, excluding the obligation imposed by law before St. 1898, c. 578, § 11, it includes an obligation to save the city of Northampton harmless from one fourth the expense of maintaining the bridges upon the locations extended in 1894 except the cost of painting which shall be in addition to the cost and expense of maintaining in repair the surface material of the bridges, and which arises from and is due to the greater wear and strain thereon and the greater deterioration to which they were subjected by the use of the street railway, and to which the bridges would not otherwise have been subjected by ordinary travel. Such condition, restriction and agreement, in so far as it was in addition to the burden imposed on the defendant by St. 1864, c. 229, § 18, or otherwise, to keep the streets, roads

and bridges in repair, was not abrogated by St. 1898, c. 578, § 11, which enacts that "Street railway companies shall not be required to keep any portion of the surface material of streets, roads and bridges in repair" unless the legal obligation was imposed in original grants of location. *Selectmen of Hyde Park* v. *Old Colony Street Railway*, 188 Mass. 180. The case of *Fall River* v. *Bay State Street Railway*, 228 Mass. 575, is not in conflict, as it decided only that an alleged obligation of the street railway to keep in repair "all of the roadway of said bridge, for its entire length," was annulled by St. 1898, c. 578, § 11. See *Worcester* v. *Worcester Consolidated Street Railway*, supra, in connection with *Mayor & Aldermen of Worcester* v. *Worcester Consolidated Street Railway*, 192 Mass. 106.

Count 5 presents no independent cause of action; the different items of interest arise, if at all, by way of damage for the failure of the defendant to meet its several obligations upon demand, and distributively should form one of the items sought to be recovered under each of the several counts. The demurrer thereto must be sustained. R. L. c. 173, § 6, cls. 4, 5.

It follows that the demurrers must be sustained as to counts 1, 2, 3 and 5 of the declaration, and overruled as to count 4. And it is

*So ordered.*