BOSTON, WORCESTER & NEW YORK STREET RAILWAY
COMPANY *vs.* COMMONWEALTH.

Suffolk.    December 14, 1937. — October 25, 1938.

Present: FIELD, C.J., LUMMUS, QUA, & COX, JJ.

*Department of Public Works. Street Railway,* Location. *Way,* Public:
street railway location, State highway. *Contract,* Validity.

The department of public works, in laying out and constructing a State
highway with Federal aid, had no power to contract with a street
railway company to pay it money of the Commonwealth in return
for the company's abandonment of its location within the proposed
highway.

PETITION, filed in the Superior Court on April 12, 1935.

There was a finding for the petitioner in the sum of
$481,380.45 by *Walsh,* J.    The respondent alleged exceptions.

*E. O. Proctor,* Assistant Attorney General, for the Commonwealth.

*B. W. Warren, (D. C. Starr* with him,) for the petitioner.

QUA, J.    This is a petition to recover against the Commonwealth the sum of $363,306 and interest alleged to be
due under a purported contract in writing between the
petitioner and the Commonwealth bearing date April 11,
1932.

The alleged contract is executed in behalf of the Commonwealth by the department of public works.    It recites
that the department has laid out and taken charge of "the
Worcester Turnpike, so called," in Framingham, Natick,
Wellesley and Newton, and contemplates the laying out
and taking charge of an extension easterly into the town
of Brookline; that the "Company" (petitioner) has been
granted "franchises to operate" and is operating a street
railway in those municipalities; that the department is of
the opinion that public necessity and convenience require
the elimination of the company's tracks from within the
location of the turnpike; and that such elimination will

result in saving a large sum which would be required for the construction of the turnpike if the tracks were permitted to remain. The Commonwealth agrees to pay to the petitioner the sum of $363,306 and also to pay for certain work done and to be done by the petitioner, not to remove the petitioner's rails and equipment under a previous relocation order or otherwise until the sum first mentioned shall have been paid, and then to take out the petitioner's tracks, poles and equipment from within the layout of the turnpike, to keep a portion of the turnpike open during construction for the operation of the petitioner's buses, if such operation shall be authorized, "to assist the Company in every possible way in accommodating the public on this line," and to "use every endeavor" to secure for the petitioner from municipal authorities release from its liability to provide lights on the turnpike. The petitioner agrees, when the sum first mentioned has been paid to it, "to discontinue the operation of its street railway line and to cancel, terminate, surrender, vacate, and abandon the franchises heretofore granted by the towns of Framingham, Natick and Wellesley, and the city of Newton, rights of way and location in said Worcester Turnpike, or however it may be locally known or designated," and to remove promptly upon request the rails, ties, poles, wires and other equipment which the Commonwealth is to take out.

Stripped of incidentals and accessories, the contract is, in essence, one by which the Commonwealth by payment of a large sum of money buys out the petitioner's rights in its street locations. The department of public works had no authority to bind the Commonwealth by a contract of this kind. We think this will clearly appear from an examination into the nature of street railway location rights in this Commonwealth and into the scope of the powers of the department with respect to them.

From the very beginning locations for street railways have been granted, whenever the public interest required, by public authority for an unlimited period of time, but subject always to revocation without compensation by the particular authority and in the particular manner pre-

scribed by law when further continuance was no longer compatible with the public interest. Street railways devote their capital investment to a public use which they are bound to regard and to serve. They pay no money for their street locations and they acquire by them no property rights in land and no easements in the streets. They are allowed to come, are regulated while in operation, and are required to depart, not as a matter of trade or contract, but always as a result of some particular determination upon consideration by an authorized board as to the public necessity and convenience of the service at the particular time and place. The procedure might be described as *quasi* judicial and is not merely a matter of public business administration. The issue is determined broadly from the standpoint of the public interest in the service and not from the standpoint either of payment for the right or of reimbursement for its loss. Although these propositions have not been stated elsewhere in precisely this form, they are nevertheless clear general deductions from the following statutes and decisions: St. 1864, c. 229, §§ 14, 15, 16, 17, 19, 22, 24. G. L. (Ter. Ed.) c. 161, §§ 7, 40, 70, 71, 72, 73, 74, 75, 77 (as amended by St. 1934, c. 310, § 1), 82, 84, 85, 86 (as amended by St. 1934, c. 310, § 2), and 87. *Commonwealth* v. *Temple,* 14 Gray, 69, 76. *Cambridge* v. *Cambridge Railroad,* 10 Allen, 50, 57–58. *Union Railway* v. *Mayor & Aldermen of Cambridge,* 11 Allen, 287, 291–294. *Middlesex Railroad* v. *Wakefield,* 103 Mass. 261, 263. *Medford & Charlestown Railroad* v. *Somerville,* 111 Mass. 232. *Attorney General* v. *Metropolitan Railroad,* 125 Mass. 515, 517. *Springfield* v. *Springfield Street Railway,* 182 Mass. 41, 47–49. *Selectmen of Amesbury* v. *Citizens Electric Street Railway,* 199 Mass. 394. *Connecticut Valley Street Railway* v. *Northampton,* 213 Mass. 54, 63–64. *Sawin* v. *Connecticut Valley Street Railway,* 213 Mass. 103, 107. *Arlington Board of Survey* v. *Bay State Street Railway,* 224 Mass. 463, 469. *Northampton* v. *Northampton Street Railway,* 231 Mass. 540, 544–545. *Burgess* v. *Mayor & Aldermen of Brockton,* 235 Mass. 95, 101. In *City Council of Salem* v. *Eastern Massachusetts Street Railway,* 254 Mass. 42, at

page 45, it was said that the power to revoke a street railway location "rests upon the ground that public necessity and convenience in the use of the way require it. The action of the city council [revoking the location] could not be based upon any other reason." G. L. (Ter. Ed.) c. 161, § 77, which was in force when the alleged contract was made, specifically provides that after the expiration of one year from the opening for use of a street railway a board of aldermen or selectmen, after public notice and a hearing, "if public necessity and convenience in the use of the public ways so require, may, for good and sufficient reasons to be stated in the order therefor," revoke a location, but unless the company consents in writing within thirty days "such order shall not be valid until approved by the department [meaning here the department of public utilities and not the department of public works, § 1] after public notice and a hearing."

With this background of established law and policy it would be surprising to find that the Legislature had authorized the department of public works as a mere matter of trading in the course of constructing a State highway to revoke or consent in behalf of the public to the revocation of street railway locations without being compelled to make any investigation or finding as to the public necessity of the service, with no opportunity to the public for a hearing, and at the same time ousting from all jurisdiction over the matter the department of public utilities, a board of equal dignity whose special concern is with such affairs. It would be particularly surprising to find authority to pay public moneys to end in this manner locations which could b brought to an end through the ordinary methods "if public necessity and convenience in the use of the public ways so require" for any "good and sufficient reasons" without the payment of a single dollar. The intent to grant such powers is not to be lightly inferred. Some clear indication of legislative purpose should be found.

We do not find in the statutes any grant of such power. The department of public works may lay out State highways and, with the approval of the Governor and Council,

make contracts for their construction. G. L. (Ter. Ed.)
c. 81, §§ 1–8 (as amended). It shall maintain them in
repair. §§ 13–15. The only mention of street railway loca-
tions in connection with the powers of this department is
found in G. L. (Ter. Ed.) c. 161, §§ 81, 82, 85 and 131,
whereby the department is authorized (1) upon application
in writing of a board of aldermen or selectmen and a com-
pany having a location, to indicate the location and grade
for the tracks in a way of which the Commonwealth has
been requested to take charge, and, if the department con-
siders the way suitable for a State highway, to pay such
proportion of the property damages and cost of grading as
shall be agreed upon between the department and the com-
pany; (2) to have the authority relative to the location,
maintenance and revocation of street railways upon State
highways conferred upon boards of aldermen and selectmen
as to other ways, to be exercised "in the same manner, and
subject to the same rights and limitations," with an excep-
tion not here material; (3) to establish regulations for the
clearing of snow from the tracks in State highways; and
(4) to authorize structures or alterations necessary for
carrying a street railway over or under a railroad. The
detailed enumeration and careful limitation of the powers
granted suggest that no additional powers were intended.
The power to revoke street railway locations on State
highways is clearly subject, as in the case of municipal
authorities dealing with local ways, to a finding of public
necessity and convenience, to the requirement of public
notice and a hearing and, unless the company consents in
writing within thirty days, to ultimate decision by the
department of public utilities. The department of public
works is substituted for the local authorities in the matter
of street railway locations on State highways, and it is
bound to act in the same manner in which they are bound
to act. There is nothing in all this which confers authority
to buy off street railways. A contract for that purpose is
not incidental to the construction of a State highway. And
it is plain notwithstanding the reference to public necessity
and convenience in the recitals of the contract that the

department of public works did not proceed in the manner required by the statute for the exercise of such powers as it did possess. If it intended to exercise those powers, it should have made an order under G. L. (Ter. Ed.) c. 161, § 77, after notice and a hearing, revoking the locations for reasons stated in the order instead of negotiating a contract for the payment of money.

The petitioner is not helped by G. L. (Ter. Ed.) c. 81, § 30, relating to Federal aid in the construction of highways. It is difficult to believe that the Legislature intended by the very general language used in this section to empower the department of public works in any case to override the established system of law applicable to locations, including the ultimate control over them by the department of public utilities. In this case there is nothing to show that the making of the contract was in any sense "necessary to co-operate with the United States" or "required to secure federal aid."

The case of *Boston & Albany Railroad* v. *Commonwealth*, 296 Mass. 426, differs fundamentally from the case at bar in respect to the powers expressly granted to the commission.

We have not thought it necessary to discuss *Selectmen of Amesbury* v. *Citizens Electric Street Railway*, 199 Mass. 394, or the statute there construed, now G. L. (Ter. Ed.) c. 161, § 86, as amended, because even if the petitioner had power to abandon its locations voluntarily, which we do not decide, we can find in that no authority to the department of public works to buy them.

*Exceptions sustained.*
*Judgment for the respondent.*